# United States Court of Appeals
## For the First Circuit

No. 07-1157

ELAINE MAYMÍ,

Plaintiff, Appellant,

v.

PUERTO RICO PORTS AUTHORITY; MR. MIGUEL SOTO-LACOURT,
Executive Director in his official and personal capacity;
MARITZA VALLE, Assistant to the Executive Director in her
official and personal capacity; CARMEN VANESSA DÁVILA, in her
official and personal capacity,

Defendants, Appellees,

RAQUEL MARTÍ-ORTIZ; CONJUGAL PARTNERSHIP SOTO-MARTÍ,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Raymond L. Acosta, U.S. Senior District Judge]

Before

Torruella and Howard, Circuit Judges,
and Delgado-Colón,* District Judge.

Godwin Aldarondo-Girald, with whom Aldarondo Girald Law Office
was on brief, for appellant.
Celina Romany, with whom Celina Romany Law Offices, was on
brief, for appellees in their official capacities.
Susana I. Peñagarícano-Brown, Assistant Solicitor General,
Department of Justice, with whom Salvador J. Antonetti-Stutts,
Solicitor General, Mariana Negrón-Vargas, Deputy Solicitor General,
and Maite D. Oronoz-Rodríguez, Deputy Solicitor General, were on
brief, for appellees in their individual capacities.

---

* Of the District of Puerto Rico, sitting by designation.

January 30, 2008

**TORRUELLA**, **Circuit Judge**. Plaintiff Elaine Maymí filed this complaint against the Puerto Rico Ports Authority and various officials, alleging political discrimination and retaliation.[1] She asserted claims under the First, Fifth, and Fourteenth Amendments and 42 U.S.C. §§ 1983, 1985, and 1986, as well as analogous provisions under Puerto Rico law. Upon motion by the defendants, the district court allowed summary judgment on all federal claims and declined to exercise jurisdiction over Maymí's supplemental state claims. Maymí now appeals. After careful consideration, we affirm the decision of the district court.

## I.  Background

Maymí, a member of the Popular Democratic Party ("PDP"), began her career with the Puerto Rico Ports Authority as an "Attorney II" in 1985. She was later promoted to an "Attorney III," and in that capacity defended the Ports Authority in various legal proceedings. One of those suits was a 1993 civil claim filed by Maritza Valle, who asserted that the Ports Authority, then controlled by the New Progressive Party ("NPP"), engaged in political discrimination. The case was dismissed in 1996 with costs and attorneys' fees imposed on Valle. Undeterred, in 2000,

---

[1]  The individual defendants, in both their official and personal capacities, are: (1) Miguel Soto Lacourt, Executive Director of the Puerto Rico Ports Authority; (2) Maritza Valle, Executive Assistant to the Executive Director of the Puerto Rico Ports Authority; and (3) Carmen Vanessa Dávila, Auxiliary Executive Director of Administration of the Puerto Rico Ports Authority.

Valle filed a second complaint alleging political discrimination and retaliation by the NPP.

In January 2001, the PDP gained control of the government. Miguel Pereira was appointed Executive Director of the Ports Authority and Maymí was appointed as Auxiliary Executive Director for Administration, a trust position.[2] Maymí alleges that after hearing of her appointment, Valle began directing criticism against her. In December 2001, Valle amended her complaint and added Maymí as a defendant, alleging that she was "an ally of the NPP administration to persecute and discriminate against her." Around that time, Pereira resigned as Executive Director and José Baquero was appointed Executive Director. Maymí continued in the same position.

In April 2003, Baquero resigned and Miguel Soto-Lacourt was appointed as the new Executive Director. Upon his appointment, Maymí submitted a letter offering to step down from her

---

[2] We have previously recognized the legal distinction between career and trust employees under Puerto Rico law:

Puerto Rico law distinguishes between "career" employees and "trust" employees. Career employees are permanent and "'may only be removed from their positions for just cause and after due filing of charges.'" Figueroa-Serrano v. Ramos-Alverio, 221 F.3d 1, 3 n.1 (1st Cir. 2000) (quoting P.R. Laws Ann. tit. 21, § 4554(b)). By contrast, trust employees "shall be of free selection and removal," i.e., removable with or without cause. P.R. Laws Ann. tit. 3, § 1350.

Aguiar-Carrasquillo v. Agosto-Alicea, 445 F.3d 19, 23 (1st Cir. 2006).

-4-

appointment, but expressing her interest in continuing in the position. She received no response and remained in the trust position. Soon after his appointment, Soto-Lacourt appointed Valle as his Executive Assistant and the two allegedly instructed Maymí to dismiss and remove employees who served in trust positions. Among those affected was Gerónimo Vázquez, acting Director of the General Services Office. According to Maymí, Soto-Lacourt stated that despite Vázquez's past performance and years of service, he wanted to remove him because of his affiliation with the NPP. Furthermore, in the course of that same conversation, Soto-Lacourt allegedly made reference to three secretaries who had also worked with the NPP administration and expressed his interest in replacing them with PDP members. Maymí explained that because the secretaries held career positions, they could not be discriminated against for political reasons. Soto-Lacourt allegedly expressed frustration with her explanation.

Soto-Lacourt then asked Maymí to draft a contract retaining the services of a consulting firm, Personnel Management Group, to review and amend the existing job classification plan. Soto-Lacourt allegedly stated that he was retaining the firm to create a new, more flexible plan in order to grant positions and increased salaries to those who "helped him and the PDP." Maymí drafted the service contract and the Personnel Management Group was retained. Despite her responsibility over human resources issues,

she was excluded from all meetings concerning the new job classification plan.

On May 29, 2003, Maymí was informed that she was to be removed from her trust position and reinstated in her prior career position as an "Attorney III" in the Legal Division. Soto-Lacourt allegedly explained that she was being demoted "because of the things we have previously discussed" which Maymí understood to refer to her opposition to his desire to remove NPP members from career positions.

Maymí's monthly salary decreased from $6,319 to $5,469 as a result of her reassignment. According to Maymí, Valle ordered her salary to be reduced further, below the salary for an "Attorney III," to $5,327 per month. On June 9, 2003, Carmen Vanessa Dávila was appointed as Auxiliary Executive Director of Administration (Maymí's former position) and executed Valle's salary reduction order. Maymí was allegedly also assigned inferior duties and denied other benefits and rights, including work schedule accommodations and the payment of her excess annual leave.

On October 31, 2003, Maymí filed a complaint in the United States District Court for the District of Puerto Rico, seeking compensatory and pecuniary damages and alleging violations pursuant to the First, Fifth, and Fourteenth Amendments of the United States Constitution and 42 U.S.C. §§ 1983, 1985, and 1986. She also moved the Court to exercise its pendent jurisdiction

regarding her state law claims.  In August 2006, the defendants moved for summary judgment.  The district court granted summary judgment, concluding that, inter alia, Maymí had failed to establish any of her federal claims.  Having dismissed the federal claims, the court declined to exercise supplemental jurisdiction over her state law claims.

## II.  Discussion

### A.  Standard of Review

On appeal, we review a district court's entry of summary judgment de novo.  See Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006).  Summary judgment is appropriate only when the record reveals that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is material if it has the potential of determining the outcome of the litigation.  See Calvi v. Knox County, 470 F.3d 422, 426 (1st Cir. 2006).  "Once the moving party avers the absence of genuine issues of material fact, the nonmovant must show that a factual dispute does exist, but summary judgment cannot be defeated by relying on improbable inferences, conclusory allegations, or rank speculation."  Ingram v. Brink's, Inc., 414 F.3d 222, 228-29 (1st Cir. 2005).  Accordingly, reversal is proper only if, after reviewing the facts and making all inferences in favor of the non-moving party (here, Maymí), the evidence on record is "sufficiently open-ended to

-7-

permit a rational factfinder to resolve the issue in favor of either side." Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995), quoted in Coyne v. Taber Partners I, 53 F.3d 454, 456 (1st Cir. 1995).

### B. Political Discrimination and First Amendment Claims

In making a political discrimination claim under 42 U.S.C. § 1983, the plaintiff bears the burden of establishing that the defendants deprived her of federally protected rights while acting under color of state law. Cepero-Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir. 2005). In this case, Maymí's § 1983 claim is based on alleged violations of the First Amendment right to speech and, therefore, she must produce evidence that partisanship was a substantial or motivating factor in the adverse employment action.[3] See Jirau-Bernal v. Agrait, 37 F.3d 1, 3 (1st Cir. 1994). In order to be redressable, the alleged adverse employment action must result "in conditions 'unreasonably inferior' to the norm for that position." Rosario-Urdaz v. Velazco, 433 F.3d 174, 178 (1st Cir. 2006) (quoting Agosto-de-Feliciano v. Aponte-Roque, 889 F.3d 1209, 1218-19 (1st Cir. 1989) (en banc)). If the plaintiff can

---

[3] In her complaint, Maymí also asserts that she was deprived of her right to freedom of association, but makes only a cursory argument that she suffered retaliation for befriending someone with different political opinions. Given the particular facts in this case, her allegations are more properly presented as a freedom of speech issue. Regardless, as in the speech cases, it is perfectly acceptable to remove a trust employee solely based on just this kind of association: being a member of a political party. See, e.g., Galloza v. Foy, 389 F.3d 26, 28-29 (1st Cir. 2004).

-8-

overcome that hurdle, the burden then shifts to the defendants to demonstrate that they would have taken the same action for constitutional reasons. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 286-87 (1977).

## 1. Reassignment to Career Position

Generally, the First Amendment, as applied to the states and, in this case, Puerto Rico, through the Fourteenth Amendment, prohibits the dismissal of a public employee solely on the basis of his or her political affiliation and beliefs. See Bd. of County Comm'rs, Wabaunsee County, Kan., v. Umbehr, 518 U.S. 668, 674-75 (1996); Gómez v. Rivera Rodríguez, 344 F.3d 103, 109-10 (1st Cir. 2003). One clear exception to this rule is in cases where political affiliation is an "appropriate requirement for the effective performance of the public office involved." Branti v. Finkel, 445 U.S. 507, 518 (1980). Given the need for elected officials to have a group of leaders and top subordinates who are responsive to their policy goals, the focus of our inquiry is whether the dismissed employee was "in close working relationships with policymakers." Flynn v. City of Boston, 140 F.3d 42, 45 (1st Cir. 1998) (recognizing that our cases have upheld dismissals on political grounds of "mid- or upper-level officials or employees who are significantly connected to policy-making"); cf. Elrod v. Burns, 427 U.S. 347, 367 (1976).

In this case, the district court held that with respect to her demotion from Auxiliary Executive Director to "Attorney III," Maymí had failed to establish a prima facie claim for either discrimination under 42 U.S.C. § 1983 or for retaliation. In essence, the court concluded that because she was a trust employee, she was freely subject to removal from her position and, therefore, had no claim for adverse employment or violation of First Amendment rights to free speech.[4] We agree.

There is no dispute that Maymí's appointment as Auxiliary Executive Director for Administration established her in a trust position. The job description states: "This is executive work which participates and collaborates in the formulation and implementation of public policy of the agency." Pursuant to Puerto Rico law, she was a trust employee who is "of free selection and removal." P.R. Laws Ann. tit. 3, § 1350.[5] Furthermore, her own actions belie any argument that she believed her position to be immune from political dismissal. Upon the appointment of Soto-

---

[4] On appeal, Maymí also asserts that the district court erred in failing to rule on her motion to strike Soto-Lacourt's unsworn statement under penalty of perjury. The court's summary judgment order was based on Maymí's failure to make an initial showing of discrimination. Accordingly, we need not address this argument, as it appears the unsworn statement was irrelevant to the court's analysis.

[5] We have recently cautioned that the label of "trust employee," alone, does not automatically leave an employee vulnerable to patronage dismissal. See Montfort-Rodríguez v. Rey-Hernández, 504 F.3d 221, 225 n.10 (2007). On appeal, there is no argument as to whether Maymí's position involved policy-making responsibilities.

-10-

Lacourt in April 2003, Maymí submitted a letter in which she expressed her desire to remain in the trust position, but recognized that she may be dismissed. Accordingly, Maymí was clearly not protected from partisan-based dismissal from her trust position.

Maymí's next argument, that her dismissal was in retaliation for the exercise of her rights to free speech and association, is similarly unavailing. A government employee's First Amendment rights depend on a "balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering v. Bd. of Educ. of Township High Sch. Dist., 391 U.S. 563, 568 (1968). Among those state interests which may be impaired by an employee's comments are discipline, promoting harmony among co-workers, interference with duties, and the interest in preserving a close working relationship for which personal loyalty and confidence is necessary. Rankin v. McPherson, 483 U.S. 378, 388 (1987).

The particular speech at issue in this case is Maymí's opposition to Soto-Lacourt's personnel decisions.[6] Maymí asserts

---

[6]     On appeal, Maymí also appears to claim that she suffered retaliation for her "speech" while defending the Ports Authority against the civil complaint filed by Valle. To the extent this is her argument, it is likewise unavailing. This "speech," which was made in the course of providing legal representation as a public

-11-

that she was retaliated against for objecting to the dismissal of employees affiliated with the NPP, some of whom were career secretaries. According to Maymí, after explaining that the secretaries were excellent employees and could not be discriminated against and removed because of partisan affiliation, Soto-Lacourt responded: "I cannot understand why you defend so much the NPP people." Later that same month, she was removed from her trust position and reinstated as a career attorney.

Generally, we have recognized a "reasonable working rule" that "where the employee is subject to discharge for political reasons under the Elrod and Branti cases, a superior may also -- without offending the First Amendment's free speech guarantee -- consider the official's substantive views on agency matters in deciding whether to retain the official in a policy related position." Flynn, 140 F.3d at 47 (referring to Elrod v. Burns, 427 U.S. 347 (1976), and Branti v. Finkel, 445 U.S. 507 (1980)). Thus, even assuming for summary judgment that Maymí's statements challenging Soto-Lacourt's authority to terminate the secretaries' employment contributed to her dismissal, her position as a trust employee forecloses her claim.

---

employee, is not afforded protection under the First Amendment. See Garcetti v. Ceballos, 126 S. Ct. 1951, 1960 (2006) (holding that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline").

Here, Maymí's speech involved decisions regarding the hiring and firing of employees within the office. We have previously held that such speech is of the kind that may lead an employer reasonably to question the trust and confidence necessary to retain the employee:

The issues about which [the plaintiffs] spoke -- and the speech to which they attribute their firings -- related to the operation of the office (primarily to matters of hiring, firing and discipline). Yet it is issues of this kind, and the views of management employees about these issues, that are properly considered by the head of the office in deciding who is best suited to be her direct subordinates. Id. We are unpersuaded by Maymí's attempts to distinguish this case from Flynn.

Both cases involve claims brought by policymaking employees who were removed allegedly after expressing disagreement with partisan hiring and firing decisions within the office. In Flynn, the plaintiffs claimed that they suffered retaliation for disagreeing with the director's alleged desire to fire the entire central office staff and replace them with her own supporters and to fire those senior staff members who had worked for the previous director. Although the plaintiffs in Flynn were "public servants honestly resisting very dubious behavior by a superior," we concluded that the alleged speech was not protected as it was an expression of "disagree[ment] with their superior on a number of

policy and personnel issues before the agency [which they] (quite properly, based on their allegations) expressed . . . to her." Id. at 46. Likewise, in this case, Maymí expressed her disagreement with the defendants' alleged desire to terminate specific career employees on the basis of political affiliation. Importantly, she does not allege that she was required or ordered to carry out those allegedly illegal acts. In fact, much of her complaint and testimony indicates that she was excluded from human resource decisions and the dismissal process, generally.[7] Under Flynn, even if the plaintiff could prove at trial that her disagreement contributed to her firing, an employer is permitted to discharge an employee for insufficient trust and confidence on the basis of that disagreement. Accordingly, we conclude that any retaliation suffered as a result of the particular speech at issue here is unprotected by the First Amendment.[8]

---

[7] During the central conversation alleged in the complaint, Soto-Lacourt expressed to the plaintiff his desire to terminate career employee secretaries despite their strong performance records. There is no indication that he ordered Maymí to take any specific action against them. Rather, it appears that she was only expressing her disagreement with and disapproval of such course of action.

[8] Maymí also argues that this case comes within the exception identified in Flynn -- "[t]his does not mean that anything goes for policy-related positions: this would be a different case if an executive were fired for reporting a crime or fraud or for expressing adherence to one church or another." Id. Her reliance is misplaced; the facts in this case do not raise such concerns.

-14-

## 2.  **Retaliatory Actions in Career Position**

While Maymí's status as a trust employee bars any claims regarding her dismissal, she also argues that she suffered retaliation after her reinstatement as an "Attorney III," a career employment position.[9]  Specifically, she asserts that she was assigned inferior duties, denied benefits, not provided with reasonable work accommodations, and deprived of her full salary. She contends that those adverse employment actions were undertaken in retaliation for her exercise of protected speech.

A government employee who does not occupy a policy-making position of confidence and trust is protected from adverse employment decisions based on political affiliation. See Figueroa-Serrano, 221 F.3d at 7.  A plaintiff bringing a political discrimination claim bears the burden of "producing sufficient direct or circumstantial evidence from which a jury reasonably may infer that [the plaintiff's] constitutionally protected conduct . . . was a 'substantial' or 'motivating' factor behind" his adverse employment action. Acevedo-Díaz v. Aponte, 1 F.3d 62, 66 (1st Cir. 1993).  Proving that political affiliation was a substantial or motivating factor "requires more than 'merely juxtaposing a protected characteristic -- someone else's politics -- with the fact that the plaintiff was treated unfairly.'"

_____

[9]  The district court did not address the claims involving her treatment while an "Attorney III."

-15-

Pequero-Moronta v. Santiago, 464 F.3d 29, 45 (1st Cir. 2006) (quoting Padilla-García v. Guillermo Rodríguez, 212 F.3d 69, 74 (1st Cir. 2000)). The mere fact that an adverse action was taken after an employee exercises First Amendment rights is not enough to establish a prima facie case. See Bd. of County Comm'rs v. Umbehr, 518 U.S. 668, 685 (1996).

After review of the facts on the record, we conclude that Maymí has failed to allege sufficient facts to support her claim of political discrimination. Maymí specifically alleges that it was Valle, acting in concert with Soto-Lacourt, who instructed that her salary be reduced as a result of discriminatory animus. She further alleges that Valle prevented her from receiving appropriate salary increases (uncorrected and allowed by Soto-Lacourt). A significant thrust of her claim is that the animosity stems from prior litigation in which Maymí successfully defended the Ports Authority against Valle. There is also evidence indicating that Soto-Lacourt denied Maymí's requests for bonuses, leave payouts, and a flexible working schedule.[10]

Even taking the evidence in as favorable a light as possible, the most that her allegations support is either a finding

_____

[10] In his deposition, Soto-Lacourt defends his denials: bonuses were given by discretion for "extraordinary work;" the flexible work schedule request failed to set forth "exceptional circumstances;" and the request for liquidated leave was among numerous such requests. Because we conclude that the plaintiff fails to make a prima facie case of discrimination, we need not address the sufficiency of those explanations.

that Valle had a personal vendetta against her or that she was treated unfairly.  Those claims of personal conflict and unfair treatment, absent a showing that political affiliation was a substantial motivating factor, however, are insufficient to allege a claim of political discrimination.  Maymí must establish evidence in the record which "would permit a rational fact finder to conclude that [her dismissal] stemmed from a politically based discriminatory animus."  LaRou v. Ridlon, 98 F.3d 659, 661 (1st Cir. 1996) (quoting Rivera-Cotto v. Rivera, 38 F.3d 611, 614 (1st Cir. 1994)).  Maymí's cursory allegations regarding Valle and Soto-Lacourt are insufficient to support her contention that the alleged adverse employment actions occurred as a result of her political opinions.

## C.  Due Process Claims

Maymí also alleges violation of her Fourteenth Amendment right to procedural and substantive due process.[11]  The district court concluded that she had no property interest or legitimate claim of entitlement to continued employment as a trust employee and could not, therefore, allege a procedural due process violation.  The court also held that she had failed to establish a violation of her substantive due process rights.  We agree with both conclusions.

---

[11]  On appeal, Maymí concedes that she has no due process claim under the Fifth Amendment.

-17-

Maymí contends that her procedural due process rights were violated as a result of both her dismissal from the trust position and the alleged deprivations of salary and benefits inflicted after her reinstatement as a career employee. She alleges that although she was reinstated with a monthly salary of $5,469.50, her salary was improperly reduced to $5,427.50 at Valle's order.

To establish a procedural due process claim under § 1983, a plaintiff must alleged that she was deprived of a property interest by defendants acting under color of state law and without the availability of a constitutionally adequate process. See Marrero-Gutiérrez v. Molina, 491 F.3d 1, 8 (1st Cir. 2007). The Due Process Clause of the Fourteenth Amendment protects government employees "who possess property interests in continued public employment." Galloza, 389 F.3d at 33 (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985)). Maymí's position as a trust employee, however, provides her with no such protected interest. We have previously held that trust employees who are of "free selection and removal" have no constitutionally protected interest in that position. Galloza, 389 F.3d at 34 (citing P.R. Laws Ann. tit. 3, § 1350(8)). Accordingly, Maymí cannot assert a procedural due process violation with respect to her dismissal from the trust position.

Her allegations of salary and benefit deprivations suffered after her reinstatement as a career attorney require us to examine the existing state remedies. See Amsden v. Moran, 904 F.2d 748, 755 (1st Cir. 1990) (requiring review of "'the procedural safeguards built into the statutory or administrative procedure . . . effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law'" (quoting Zinermon v. Burch, 494 U.S. 113, 126 (1990))). Pursuant to the Public Service Personnel Act, the Puerto Rico legislature created an appeals process by which citizens are provided a legal forum in which to challenge administrative agency determinations; those decisions are then subject to judicial review. 3 P.R. Laws Ann. tit. 3, §§ 1394, 1396, 2172, 2176.[12] In her deposition, Maymí conceded that she had availed herself of these administrative procedures -- she had been reinstated to the appropriate salary, obtained retroactive relief, and was awaiting relief for damages pursuant to state law. We are convinced, therefore, that the state remedies provide sufficient procedural due process for the harms allegedly suffered after reinstatement as an "Attorney III."[13]

---

[12] In 2004, the Public Service Personnel Act, Act No. 5 of October 14, 1975, P.R. Laws Ann. tit. 3, § 1394, was repealed and substituted by Act No. 184 of August 3, 2004. Act No. 184 replaced the Appeal Board for the Personnel Administration System with the Appellative Commission of the Public Service Human Resources Administration System. P.R. Laws Ann. tit. 3, §§ 1468, 1468p.

[13] Furthermore, as discussed earlier, Maymí failed to allege facts demonstrating that the alleged reduction in her salary was fueled

-19-

With respect to her substantive due process claim, Maymí argues that her removal as a trust employee "shocks the conscience." A substantive due process claim requires allegations that the government conduct was, in and of itself, inherently impermissible irrespective of the availability of remedial or protective procedures. Amsden, 904 F.2d at 753. The state conduct itself must be so brutal, demeaning, and harmful that it is shocking to the conscience. See Rochin v. California, 342 U.S. 165 (1952); Amsden, 904 F.2d at 754 ("state action must in and of itself be egregiously unacceptable, outrageous, or conscience-shocking"). The allegations amount to a case in which Maymí was reinstated to a career position with inferior duties and a decreased salary. Such allegations, even if true, are insufficient to cross this constitutional threshold.

## D. **Conspiracy**

Lastly, Maymí alleges that the defendants conspired to deprive her of civil rights, in violation of 42 U.S.C. §§ 1985 and 1986. In order to demonstrate the existence of a conspiracy under § 1985, a plaintiff must prove that the conspiracy was motivated by some "racial, or perhaps otherwise class-based, invidiously discriminatory animus." Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 268 (1993) (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)); see also Donahue v. Boston, 304 F.3d 110, 122 (1st

by political animus.

-20-

Cir. 2002). Furthermore, the plaintiff must show that the conspiracy was "aimed at interfering with protected rights." Donahue, 304 F.3d at 122 (citation omitted); see also Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). In this case, Maymí failed to fulfill either requirement. Furthermore, absent a showing of conspiracy, she has no claim under § 1986, which extends liability to those who knowingly failed to prevent conspiracies under § 1985. 42 U.S.C. § 1986.

### III. Conclusion

After dismissing all of the complaint's federal claims, the district court properly exercised its discretion in declining supplemental jurisdiction over the state law claims.[14] See Morales-Santiago v. Hernández-Pérez, 488 F.3d 465, 472 (1st Cir. 2007). For the foregoing reasons, the judgment of the district court allowing the motions for summary judgment and dismissing the complaint is affirmed.

**Affirmed**.

---

[14] Since we agree with the district court that all of the defendants were entitled to summary judgment on the federal claims, we need address neither Dávila's personal involvement in the case nor the defendants' qualified immunity defense.

-21-