# United States Court of Appeals
## For the First Circuit

No. 10-1849

LUIS COSTAS ELENA; HAZEL RUSSELL-MCMILLAN;
and their CONJUGAL PARTNERSHIP,

Plaintiffs, Appellants,

v.

MUNICIPALITY OF SAN JUAN; ANDRÉS RIVERA; FERNANDO CORDERO,

Defendants, Appellees,

HENRY PAREDES; CARMEN DESPRADEL;
and their CONJUGAL PARTNERSHIP,

Defendants / Third-Party Plaintiffs, Appellees,

PUERTO RICO ELECTRIC POWER AUTHORITY,

Third-Party Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José A. Fusté, U.S. District Judge]

Before

Torruella, Stahl, and Thompson,
Circuit Judges.

David W. Román, José E. Alfaro-Delgado, and Brown & Ubarri on brief for appellants.
Jorge R. Quintana-Lajara on brief for appellees Municipality of San Juan and Andrés Rivera.
Michael C. McCall on brief for appellee Fernando Cordero.
Ernesto R. Irizarry on brief for appellees Henry Paredes, Carmen Despradel, and their conjugal partnership.
Edwin J. Rivera Maldonado and Carlos M. Aquino Ramos on brief for appellee Puerto Rico Electric Power Authority.

April 16, 2012

**THOMPSON**, **Circuit Judge**.  Plaintiffs Luis Costas Elena and Hazel Russell McMillan appeal the district court's dismissal of their complaint alleging a host of constitutional violations instigated by neighboring landowners Henry Paredes and Carmen Despradel and carried out by the Municipality of San Juan, Puerto Rico.[1]  Specifically, the plaintiffs say, Paredes and Despradel lured the city into killing a botanical menagerie, including lush trees and rare orchids, that the plaintiffs had maintained on their property in San Juan.  In the end, however, not a single federal claim has been pled adequately, so we affirm the dismissal of the plaintiffs' entire case.

Plaintiffs Costas and Russell had a longstanding feud with neighboring landowners Paredes and Despradel.  The problem was rooted in now-deceased vegetation that the plaintiffs describe as "palm trees, bushes and a large, healthy tree that . . . served as a sanctuary for wild parrots . . . as well as heliconia and ginger" but that Paredes and Despradel describe as having been so "wild, uncultivated, and sparse[]" as to have caused them "miser[y] . . . and intense suffering."[2]  According to the plaintiffs, the "large,

---

[1] Technically, the Costas/Russell and Paredes/Despradel conjugal partnerships are parties, too.  But the conjugal partnerships do not matter for our purposes, so this is the last we will say of them.

[2] Indeed, Paredes and Despradel alleged that the plaintiffs allowed "coconuts [to] hang over to [their] back yards, which exposes anyone in their property to be killed, should a coconut fall down to the ground."

-3-

healthy tree" (which was also "magnificent and majestic") served as a marker tree that spanned and defined the boundary between the plaintiffs' and their neighbors' respective properties.

After years of torment at the sight of the plants next door, Paredes and Despradel set into motion the destruction of the marker tree, which they said threatened some nearby power lines. First, they applied for and the Puerto Rico Natural Resources Department granted them a permit to take down the tree. Then the Puerto Rico Electric Power Authority temporarily shut off power to the allegedly threatened lines. And from May 27 to June 5, 2008, the Municipality of San Juan took care of the tree itself, sending municipal employees — first Andrés Rivera and then Fernando Cordero, both named as defendants — to cut the infringing branches. As a result of this trimming, the so-called marker tree was left without any branches (it later died), and the plaintiffs' yard was left in disarray: the municipal employees "crushed and broke a metal trellis that harbored 80 or more . . . orchids; crushed and decapitated many palm trees; [and] crushed and cut many bushes and plants . . . including heliconia and ginger."[3]  They also

_____

[3] Notably, some of the orchids had been "hand-carried" from Longwood Gardens in Kennett Square, Pennsylvania. This is no small matter:

> Longwood is a very large and world-renowned public garden [that] features an expansive arboretum where trees and shrubs are cultivated, immaculate flower gardens, collections of rare plants, a huge conservatory and greenhouse complex, architectural displays, a water

"destroy[ed] a special avocado tree that was in flower to bear fruit" and had been an anniversary present from Russell to Costas.

As Rivera and then Cordero decimated the plaintiffs' beloved plants, the plaintiffs challenged each respectively to defend his actions.  Rivera said he was acting at Paredes's request but declined to show the plaintiffs any permit; Cordero refused to provide any information at all.

On December 23, 2008, the plaintiffs filed this federal-court action against the Municipality of San Juan and Rivera and Cordero in their individual and official capacities (from now on, collectively the municipal defendants), and Paredes and Despradel (from now on, collectively the Paredes defendants).  The plaintiffs alleged violations of 42 U.S.C. § 1983 based on: (1) the Municipality's practice of destroying vegetation without affording landowners any predeprivation notice or opportunity to be heard — effectively, a procedural due process claim; (2) the Municipality's taking of the plaintiffs' various plants without just compensation; and (3) a broadly-styled claim that the defendants' conduct caused

---

garden, fountains, an open air theater for the performing arts, managed meadow and forest lands, wetlands, wildlife habitats, walking trails, picnic areas, and a variety of educational and research facilities.

Unionville-Chadds Ford Sch. Dist. v. Chester Cnty. Bd. of Assessment Appeals, 714 A.2d 397, 398 (Pa. 1998).  The New York Times has described Longwood's conservatory as "a lush, steamy, orchid-festooned paradise."  Carol Kino, A Garden With a Profusion of Ideas, N.Y. Times, Mar. 14, 2010.

the plaintiffs "intense pain and suffering" — essentially, a local-law tort claim. The complaint set off a flurry of responsive pleadings.

On February 25, 2009, the Paredes defendants answered, claiming full ownership of the damaged tree but acknowledging that it encroaches on the plaintiffs' property, alleging that the tree had threatened nearby power lines, stating that they had therefore obtained a permit from the Puerto Rico Natural Resources Department, and claiming that their involvement in the tree-cutting had ended there. The Paredes defendants also counterclaimed (1) that the plaintiffs' vegetation offended their right to enjoy their property and (2) that the plaintiffs were negligent in some unspecified way.

On February 28, 2009, two of the municipal defendants (the Municipality itself and Rivera) answered, broadly denying liability; they also cross-claimed for indemnification from the Paredes defendants on the basis of a waiver Paredes and Despradel had allegedly executed.

On March 4, 2009, the Paredes defendants answered the cross-claim, broadly denying liability and asserting a counter-cross-claim seeking indemnification from the Municipality and its insurers because of "obstinacy." Then on March 11, 2009, the Paredes defendants filed a third-party complaint against the "Electric Energy Authority of Puerto Rico," claiming that the

agency not only induced the Municipality to destroy the plaintiffs' tree but also sent personnel onto an alleged servitude between the plaintiffs' and the Paredes defendants' properties in order to remove plants.

On March 17, 2009, the plaintiffs answered the Paredes defendants' counterclaims with a broad denial of liability.

On March 20, 2009, Cordero (for some reason not included in the Municipality's original answer) answered the plaintiffs' complaint with a broad denial of liability. And on March 30, 2009, all three municipal defendants answered the Paredes defendants' counter-cross-claim, seeking sanctions for the Paredes defendants' "reckless[] . . . misrepresentation" regarding "obstinacy."

No doubt feeling left out from the web of parties-suing-parties, the Puerto Rico Electric Power Authority (presumably the same entity as the earlier-named Electric Energy Authority of Puerto Rico, henceforth PREPA) filed a cross-claim against the Municipality, seeking indemnification.

So, to sum up: the plaintiffs sued the municipal defendants and the Paredes defendants. The Paredes defendants sued the plaintiffs, the Municipality, and PREPA. The Municipality sued the Paredes defendants. And PREPA sued the Municipality.

On October 28, 2009, the court, specifically noting the apparent absence of state action on the part of the Paredes defendants, ordered the plaintiffs to show cause why their

complaint should not be dismissed. On November 18, 2009, the plaintiffs responded to the show-cause order but did not convince the court, which dismissed the plaintiffs' claims as to the Paredes defendants and kicked out the Paredes defendants' counter-claim against the plaintiffs. The court then held that its dismissal of the claims between the plaintiffs and the Paredes defendants mooted every remaining claim except the plaintiffs' against the municipal defendants and the Municipality's waiver-based cross-claim against the Paredes defendants. The plaintiffs attempted to take this mass dismissal up on interlocutory appeal but were rebuffed.

On January 8, 2010, the municipal defendants filed their own motion to dismiss or for judgment on the pleadings, arguing that the plaintiffs' takings claim was unripe and that their due process claims failed for want of a property interest. The plaintiffs responded on February 1 but again did not convince the court, which granted judgment on the pleadings dismissing (1) the procedural due process claim on the unargued ground that any predeprivation procedure would have been impractical, and (2) the takings claim and (3) an inferred substantive due process claims for unripeness.[4]

---

[4] No substantive due process claim as such appears in the complaint; the district court, however, apparently construed the complaint as conceivably containing one and rejected any such claim prophylactically.

The district court also rejected constitutional claims based on the Fourth Amendment's prohibition against unreasonable seizures and Article IV § 2's Privileges and Immunities Clause (extended to Puerto Rico by 48 U.S.C. § 737). The plaintiffs make no discernible attempt to resurrect any such claims on appeal.

The plaintiffs appeal, trying to bring back these three claims against the Paredes and municipal defendants.

We review de novo the district court's orders entering judgment on the pleadings under Fed. R. Civ. P. 12(c) and dismissing the complaint. Pérez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008). We will affirm the dismissal only if, taking all the complaint's well-pled allegations as true and viewing the other pleadings in the light most favorable to the plaintiffs, the complaint still does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Pérez-Acevedo, 520 F.3d at 29 (applying Twombly to Rule 12(c)). The plaintiffs argue that their civil-rights claims — sounding, again, in takings and due process — survive this test against all the defendants. For reasons we will now explain, we disagree and affirm the district court.

First the plaintiffs contest the grant of judgment on the pleadings in favor of the Paredes defendants on the civil-rights claims. The statutory basis for these claims, 42 U.S.C. § 1983, renders persons acting under color of state law liable for constitutional and federal-law violations.[5] It follows that if the

_____

[5] For purposes of § 1983, Puerto Rico "is deemed equivalent to a state." Déniz v. Municipality of Guaynabo, 285 F.3d 142, 146 (1st Cir. 2002).

-9-

Paredes defendants did not act under color of state law then they cannot be liable under § 1983.

The plaintiffs claim that the Paredes defendants acted under color of state law by working "jointly and concertedly" with the municipal and commonwealth defendants to violate the plaintiffs' rights. This claim both is conclusory — the complaint does not describe specifically how the Paredes defendants did anything at all jointly and in concert with the government defendants[6] — and is untethered from any source of legal authority — the plaintiffs make no attempt to explain how the Paredes defendants fit into the scheme of § 1983 state-actor jurisprudence.[7] Because they present

[6] For example, the complaint alleges that "[d]efendant Andrés Rivera, acting jointly and concertedly with the other defendants, denuded the said tree and left only its bare skeleton," and that "[a]t all times pertinent defendants Paredes were present and acted jointly and concertedly with other defendants in the actions described herein." The plaintiffs' brief on appeal repeats the same mantra. But these exceedingly general allegations do not tell us what the Paredes defendants actually did "jointly and concertedly with" Andrés Rivera. One imagines that if, e.g., they had been hacking away at the plaintiffs' plants with machetes, then the plaintiffs would have presented specific allegations to that effect. As it is, because we give no credit to conclusory allegations, Ashcroft v. Iqbal, 556 U.S. 662, 678, 679, 681, 686 (2009), the plaintiffs' invoking "jointly and concertedly" as magic words does not "nudge[] their claims across the line from conceivable to plausible . . . ." Twombly, 550 U.S. at 570.
And, to the extent the plaintiffs attempt to draw us into reviewing "the voluminous evidence" they submitted, we decline the invitation, sticking instead to the pleadings and construing all allegations as favorably to the plaintiffs as grammar and reason allow.

[7] The plaintiffs allude to a three-part test, citing Barrios-Velázquez v. Asociación de Empleados del Estado Libre Asociado de Puerto Rico, 84 F.3d 487, 493 (1st Cir. 1996), but they do not say

only conclusory and unsupported arguments, the plaintiffs have failed to provide us with any reason to reinstate their claims against the Paredes defendants. Ashcroft v. Iqbal, 556 U.S. 662, 678, 679, 681, 686 (2009) (repeatedly noting that courts are not to credit conclusory allegations); Rodríguez v. Municipality of San Juan, 659 F.3d 168, 176 (1st Cir. 2011) (holding that a party's failure to point us toward the law governing an issue waives the issue). We affirm the dismissal of these claims.

Next the plaintiffs ask that we reinstate their takings claim against the municipal defendants. Their complaint alleged that the municipal defendants temporarily deprived the plaintiffs of the use of a corner of their property and permanently deprived them of certain plants and garden accoutrements, all without stepping forward to provide just compensation for these deprivations. The plaintiffs say these allegations are sufficient to state a claim.

The Fifth Amendment, extended to the states (and Puerto Rico) by the Fourteenth, permits government takings of private property only for public use and with just compensation to the individual deprived of the property. Déniz v. Municipality of Guaynabo, 285 F.3d 142, 146 (1st Cir. 2002). A plaintiff may claim a takings violation via § 1983, but for the claim to be ripe, a plaintiff

_____

what that test is or how their complaint satisfies it.

-11-

must first exhaust any available state remedies.[8]  Id. at 149 (holding that "[a] plaintiff's failure to exhaust the inverse condemnation remedy renders premature a section 1983 damages action predicated upon an alleged takings violation"[9]); see also Downing/Salt Pond Partners, L.P. v. Rhode Island, 643 F.3d 16, 20-27 (1st Cir. 2011) (discussing the continuing vitality of the exhaustion requirement).  This makes intuitive sense: if a plaintiff has not even tried to obtain compensation from the state, then we cannot say that the state has denied the plaintiff just compensation.  See Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 194-95 (1985).

The plaintiffs admit that they have not exhausted state remedies but meanderingly argue that any such attempt would be futile.  Although the plaintiffs use the word futility, their argument fits better into a related doctrine: exhaustion is not required where recourse to state procedures would not provide an adequate remedy.  See Gilbert v. City of Cambridge, 932 F.2d 51, 64-65 (1st Cir. 1991).  Unfortunately for the plaintiffs, though,

---

[8] The plaintiffs correctly note that § 1983 does not require them to exhaust state remedies in order to state a claim; however, that is beside the point.  A successful § 1983 claim must be grounded in some substantive violation, and a takings violation requires exhaustion.

[9] The inverse-condemnation doctrine allows a plaintiff to seek a remedy from a government actor that has bypassed the formal eminent domain process and taken property from the plaintiff. Pascoag Reservoir & Dam, LLC v. Rhode Island, 337 F.3d 87, 89 n.1 (1st Cir. 2003).

they have the burden of proving inadequacy, and (as we will explain) they have not met this burden. Id. at 65.

The plaintiffs focus on a small aspect of their takings claim — the temporary loss of use of a corner of their property — and cite cases suggesting that Puerto Rico law is not likely to afford them adequate compensation because this temporary deprivation was not "substantial." See, e.g., Commonwealth of P.R. v. Northwestern Const., Inc., 3 P.R. Offic. Trans. 523, 103 P.R. Dec. 377 (1975). But even assuming that the plaintiffs have accurately characterized Puerto Rico takings law, their discussion ignores part of their claim (the alleged taking of the tree, plants, and trellis, all of which could be deemed "substantial") and fails to "convinc[e] us that their situation is outside the [Puerto Rico] inverse condemnation remedy . . . ." Gilbert, 932 F.2d at 65. The plaintiffs cannot bypass the exhaustion requirement by carving their claim into pieces, focusing on the weakest piece, and arguing that the entire claim will fail if that piece does. In the end, their failure to argue that their entire takings claim would afford them inadequate relief in a state tribunal is fatal to their claim. See Déniz, 285 F.3d at 149.

On to substantive due process. The Fourteenth Amendment prohibits states from depriving any person of life, liberty, or property without due process of law. U.S. Const. amend. XIV. State conduct violates an individual's substantive-due-process

-13-

rights when it is "so brutal, demeaning, and harmful that it is shocking to the conscience." Maymí v. P.R. Ports Auth., 515 F.3d 20, 30 (1st Cir. 2008). Plaintiffs argue now that "the actions of the Municipality and its officials of cutting down the . . . tree by surprise and without notice, explanation or opportunity to be heard when it was easy to do so, certainly satisfies the applicable 'shocks the conscience' test."

This argument fails for a few reasons. First, no substantive-due-process claim as such actually appears in the complaint. Second, the above quote constitutes the entirety of the plaintiffs' substantive-due-process argument before us - they make no attempt at any analysis whatsoever, let alone developed argument. For both reasons, any such claim is waived. Rodríguez, 659 F.3d at 175 (noting that "we deem waived claims not made or claims adverted to in a cursory fashion, unaccompanied by developed argument"). Third and finally, where a substantive-due-process claim is founded on the same deprivation as a takings claim, as here, the due process claim is subject to the same exhaustion requirement as the takings claim. Williamson Cnty., 473 U.S. at 199-200; Déniz, 285 F.3d at 149 ("Dressing a takings claim in the raiment of a due process violation does not serve to evade the exhaustion requirement."). For all these reasons, no substantive-due-process claim is available to the plaintiffs.

This leaves only the plaintiffs' procedural-due-process claim. A government actor violates an individual's procedural-due-process rights when it deprives that individual of property without affording adequate procedural protections. See Maymí, 515 F.3d at 29.

Different defendants argue for different reasons that the plaintiffs have not sufficiently alleged any plausible property interest. Though we ultimately reject the plaintiffs' procedural-due-process claim and therefore need not decide the property-interest issue, we note that neither of the defendants' arguments is convincing. To start, the Paredes defendants argue that the tree in which the plaintiffs claim a property interest is, in fact, entirely on their (the Paredes defendants') property. But this argument fails because it presents a factbound question and ignores the complaint's contrary allegations, which we must honor in the context of Rule 12(c) motions. The municipal defendants and PREPA argue that the complaint is insufficient because the plaintiffs pled in the alternative that they had either a direct interest in the tree or else an interest in the shade and security it provided. But the rules are clear that alternative pleadings are proper, see Fed. R. Civ. P. 8(d)(2) ("If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."), and the plaintiffs appear to have presented at least one set of facts sufficient to support a plausible property interest in the tree

-15-

that forms the centerpiece of this litigation.[10]  Finally, looking

past the tree, the plaintiffs alleged the destruction of personal

property including rare orchids, ginger and heliconia plants, an

avocado tree, and a trellis and fence.  No one suggests that the

plaintiffs lacked an interest in these elements of their garden, so

we think the plaintiffs have adequately pled property interests in

them as well as the tree.

Nevertheless, the plaintiffs' claim fails for another reason:

the government's procedure here was constitutionally adequate.

Our determination of "what process is due" can be a

complicated one involving "a myriad of factors," González-Droz v.

González-Colón, 660 F.3d 1, 13 (1st Cir. 2011), but it is made

easier here by the plaintiffs' reliance on a single factor.  They

say that the defendants gave them no predeprivation notice, that

prior notice is the hallmark of procedural due process, and that

---

[10] Specifically, the plaintiffs alleged that the tree was a "marker tree" skirting the boundary between their property and the Paredes defendants'.  Under Puerto Rico law, a tree that serves as a boundary marker, as the plaintiffs allege here, may only be removed by the consent of both adjacent landowners.  P.R. Laws Ann. tit. 31, § 1805.  Even if the tree had been almost wholly on the Paredes defendants' property, the plaintiffs still might have had some property interest in it: Puerto Rico law gives an adjacent landowner the right to remove branches and roots to the extent they extend over the adjacent land.  Id. § 1804.  Otherwise, tree-trimming and -removal are the province of the landowner or government.  See, e.g., P.R. Laws Ann. tit. 22, § 196(w)(4) (requiring that PREPA report on its tree-trimming program); P.R. Laws Ann. tit. 31, § 1242 (either landowner or "authorities" shall remove tree that threatens damage).  In any event, the plaintiffs' claim of a property interest in the tree appears to be at least plausible under Puerto Rico law.

-16-

nothing in this case exempted the defendants from that basic requirement. They do not address the adequacy of postdeprivation procedures, so any argument founded on that line of reasoning is not before us.[11]

Although prior notice is generally required for a governmental deprivation of property to comport with procedural due process, the Supreme Court has held that there is an exception for cases "where a State must act quickly, or where it would be impractical to provide predeprivation process." Gilbert v. Homar, 520 U.S. 924, 930 (1997) (listing cases). In Parratt v. Taylor, 451 U.S. 527, 541 (1981) (overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327, 330-31 (1986)), for example, the Supreme Court held that predeprivation process is not constitutionally necessary in cases involving "random and unauthorized" state actions. See also Zinermon v. Burch, 494 U.S. 113, 128-30 (1990). Such "random and unauthorized" property deprivations are perhaps the most common application of the impracticality exception to prior notice; however, the variety of other circumstances within which the exception has been recognized demonstrates that the

---

[11] Other arguments the plaintiffs do not make include: (1) whether the statute authorizing tree-cutting facially provides inadequate process (in fact, no party actually discusses the statutory basis, if any, for the alleged tree-cutting permit); and (2) whether the Municipality engaged in a pattern of cutting trees of disputed ownership without notice or opportunity to be heard. We note these lacunae only to highlight that our opinion is significantly limited by the parties' arguments.

exception is a flexible one, see Herwins v. City of Revere, 163 F.3d 15, 18 (1st Cir. 1998) (stating that whether process "needs to be furnished before the seizure . . . depends on the circumstances") — as, in fact, is all due-process jurisprudence, see, e.g., Aponte-Rosario v. Acevedo-Vilá, 617 F.3d 1, 9 (1st Cir. 2010). In Parratt the Supreme Court briefly described several such circumstances from past cases, ranging from "the summary seizure and destruction of drugs without a preseizure hearing" for the protection of public health, 451 U.S. at 539 (citing Ewing v. Mytinger & Casselberry, Inc., 339 U.S. 594 (1950)), to "the immediate seizure of property without a prior hearing when substantial questions are raised about the competence of a bank's management," id. (citing Fahey v. Mallonee, 332 U.S. 245 (1947)). Though none of these cases is specifically instructive here, we reiterate that the Supreme Court's case-by-case approach to impracticality reflects the flexibility of due-process jurisprudence.

The district court relied on Zinermon and cast the municipal defendants' actions as "random and unauthorized," but we do not think that is quite right. Given that the pleadings indicate these defendants acted on the authority of a specific permit, it is difficult to say that their actions were either random or unauthorized (even if their authorization was faulty).

Nevertheless, their reliance on the permit does underscore the reason that predeprivation notice would have been impractical here.

The pleadings show impracticality because, even on the facts viewed most favorably to the plaintiffs, the municipal defendants had no reason to know of the plaintiffs' putative property interest before they undertook the deprivation at issue. The pleadings indicate that the government actors relied on the Paredes defendants' representations (or, allegedly, misrepresentations) that the damaged tree belonged to them (the Paredes defendants).[12] It simply would not be practical to require the government to spend time and treasure investigating the validity of claimed tree-ownership before undertaking every tree cutting. And notice regarding the deprivation of property other than the tree would have been even less practical, given that such damage was merely incidental to the cutting of the tree — the allegations are that the plaintiffs' garden was damaged by branches falling from the tree, not by any independent acts of the defendants. If in fact the Paredes defendants misinformed the municipal defendants in some way, then perhaps the plaintiffs have some valid tort claim — an

_____

[12] The parties dispute whether the municipal defendants cut down the tree identified by the Paredes defendants in their tree-cutting application or whether they in fact cut down a different tree. This dispute is not material. Even taking the set of facts most favorable to the plaintiffs — in which the Paredes defendants identified the tree at issue and the municipal defendants destroyed that same tree — predeprivation notice would have been impractical because the municipal defendants still would have had no idea of the plaintiffs' possible interest in the tree.

-19-

issue we do not decide.[13]    But the pleadings show that predeprivation process would have been impractical here, and the plaintiffs neither claim nor argue insufficient postdeprivation process; therefore, there has been no plausible violation of the plaintiffs' procedural-due-process rights.

Assuming the plaintiffs' allegations are true, arguably the destruction of their trees and garden was improper.  But not every improper act gives rise to a constitutional claim, and we simply see no such claim on the facts as alleged here.  We therefore **affirm** the district court's dismissal orders.  Each party shall bear its own costs.  **So ordered.**

---

[13]  We note that the district court merely "decline[d] supplemental jurisdiction over [the plaintiffs'] claims arising under Puerto Rico law" and stated that the "[p]laintiffs must seek resolution of their grievances from the Commonwealth, from which their rights under tort law arise."  Presumably, then, these claims' dismissal was without prejudice.