Excer **RIVERA–FELICIANO,**
et als., Plaintiffs,

v.

**STATE INSURANCE FUND CORP.,**
et als., Defendants.

Civ. No. 06–1080 (PG).

United States District Court,
D. Puerto Rico.

Sept. 3, 2009.

Efrain Maceira–Ortiz, Urb. Perez Morris, San Juan, PR, for Plaintiffs.

Johanna M. Emmanuelli–Huertas, Pedro Ortiz Alvarez Law Offices, Ponce, PR, Idza Diaz–Rivera, Maraliz Vazquez–Marrero, P.R. Department of Justice—Federal Litigation, San Juan, PR, for Defendants.

## OPINION AND ORDER

JUAN M. PEREZ–GIMENEZ, District Judge.

Pending before the Court is co-defendant State Insurance Fund Corporation's ("SIFC") motion to dismiss (Docket No. 22) and co-defendants Luis Ramos Navarro, Luis A. Villahermosa, Félix A. Ortiz Collazo, Nicolás Lopez–Peña, Héctor Barros–Lopez and Yadiraliz Colon–Lopez motion to join the SIFC's motion to dismiss (Docket No. 59). For the reasons set forth below, the Court **GRANTS** the motion to dismiss.

## I. BACKGROUND

Plaintiff Excer Rivera–Feliciano ("Rivera" or "Plaintiff"), his wife Nilsa Niglaglioni–Niglaglioni and the Conjugal Partnership constituted between them (hereinafter collectively referred to as "Plaintiffs") filed the above-captioned claim on January 20, 2006 against the SIFC, Nicolás Lopez–Peña ("Lopez–Peña"), Luis A. Villahermosa ("Villahermosa"), Luis Ramos Navarro ("Ramos–Navarro"), Félix A. Ortiz–Collazo ("Ortiz–Collazo"), Héctor Barros–Lopez ("Barros–Lopez") and Yadiraliz Colon–Lopez ("Colon–Lopez") in their personal and official capacity. Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 ("Section 1983") alleging that defendants discriminated against plaintiff Rivera because of his political affiliation in violation of his constitutional rights to freedom of speech and association and due

process. Plaintiffs also seek supplemental jurisdiction of their state law claims under Article 1802 of the Civil Code of Puerto Rico, P.R. Laws Ann. tit. 31, § 5141 (Puerto Rico's general tort statute) and Puerto Rico Law No. 100 of June 30, 1959, as amended, P.R. Laws Ann. tit. 29, § 146 *et seq* (Puerto Rico's discrimination statute). *See* Docket No. 1.

Shortly after filing their complaint, Plaintiffs sought to file an amended complaint (Docket No. 3) to include additional defendants, and the Court granted their request (Docket No. 4). The Plaintiffs then filed an amended complaint (Docket No. 5) including Manuel Franco–Figueroa ("Franco–Figueroa") as a co-defendant, as well as other unknown defendants. Instead of filing an answer to the amended complaint, the SIFC filed a motion to dismiss on res judicata grounds and requesting the imposition of sanctions (Docket No. 22), to which co-defendants Ramos–Navarro, Villahermosa, Ortiz–Collazo, Lopez–Peña, Barros–Lopez and Colon–Lopez joined on the same grounds (Docket No. 16). The Plaintiffs opposed the appearing defendants requests for dismissal (Docket No. 27), and the SIFC replied to their opposition (Docket No. 32).[1]

Thereafter, on August 25, 2006, the Plaintiffs filed a motion requesting leave to file another amended complaint in order to include Olga Fas–Santiago ("Fas–Santiago") as a co-defendant in this case. *See* Docket No. 35. The request was granted (Docket No. 35), and the moving defendants renewed their motion to dismiss in light of the amended complaint (Dockets No. 37–38). Then, on February 6, 2008, the Plaintiffs moved to amend the complaint one more time to include new allegations (Docket No. 52), a request that was granted by the Court once again (Docket No. 53). Accordingly, the Plaintiffs filed a fourth version of the complaint (Docket No. 54) and the appearing defendants renewed their requests for dismissal (Dockets No. 55, 59).

After filing the final amended complaint, the Plaintiffs filed a motion requesting that this Court enter a default judgment against the individual defendants. *See* Docket No. 57. The Court granted their request, but only as to individual co-defendants Fas–Santiago and Franco–Figueroa. *See* Docket No. 62, 64. Thereafter, the SIFC filed a "Motion to Lift Default Judgment" in favor of Fas–Santiago pointing out to the Court that the service of process was defective. *See* Docket No. 67. Agreeing with the SIFC, this Court set aside the default entry against Fas–Santiago and ordered Plaintiffs to properly serve process in accordance with the Federal Rules of Civil Procedure. *See* Docket No. 69.[2]

---

1. Although the Plaintiffs filed a sur-reply to the SIFC's reply (Docket No. 33), the same will not be considered inasmuch as Plaintiffs did not seek leave of the Court prior to filing, as required by Local Rule 7(c).

2. Although the SIFC did not request the lift of the entry of default against Franco–Figueroa, after a review of the summons executed upon Franco–Figueroa, this Court finds that the service of process upon this co-defendant is also defective. On the face of the summons executed, the server wrote in his handwriting that co-defendant Franco–Figueroa refused to

be served, and thus, the server gave the documents to his secretary. *See* Docket No. 7 at page 8. Rule 4(e) of the Fed.R.Civ.P. provides, in pertinent part, that an individual may be served by:

(A) delivering a copy of the summons and of the complaint to the individual personally;

(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

In the final amended complaint, plaintiff Rivera alleges to be an active member of the New Progressive Party ("NPP"), who began working at the SIFC in 1983 as a Collections Officer I, a union career position. *See* Docket No. 54 at ¶¶ 2–3. Plaintiff Rivera held the position of Collections Officer III, a career position within the bargaining unit of the SIFC, until February of 1993. After the NPP won the general elections in November of 1992, he was appointed to the trust position of Executive Regional Director of the SIFC for the region of Ponce. *See* Docket No. 54 at ¶¶ 4–6. In September of 1996, Plaintiff applied and was chosen for the managerial career position of Collection and Garnishment Division Supervisor, which had a probationary period of eight (8) months. *See* Docket No. 54 at ¶¶ 7–9. Plaintiff held this position for approximately three (3) months because in November of 1996 the NPP won the general elections again, and Plaintiff was appointed to the managerial trust position of Special Aide I to the SIFC Administrator in December of that same year. *See* Docket No. 54 at ¶¶ 10–13.

In November of 2000, the Popular democratic Party ("PDP") won the general elections. Thereafter, co-defendant Villahermosa, an active member of the PDP, was appointed to the trust position of Human Resources Director. *See* Docket No. 54 at ¶¶ 20–22. In November of 2000, the Plaintiff resigned from the trust position he held at the time, and requested to be reinstated to his last career position of Collection and Garnishment Division Su-

pervisor. *See* Docket No. 54 at ¶¶ 12–13. On December 31, 2000, Plaintiff was reinstated back to said position; his monthly salary was set at $4,492.00; and, his probationary period was set to end on May 20, 2001. *See* Docket No. 54 at ¶¶ 14–17.

On August 22, 2001, Rivera had a work-related accident and took a sick leave of absence. While on leave, he noticed a significant reduction in the paycheck he received at the end of August of 2001. *See* Docket No. 54 at ¶¶ 24–28. On or about September 21, 2001, while still on sick leave, Plaintiff alleges to have received a Change Report signed by co-defendant Villahermosa, whereby he was informed that he was reassigned to the position of Assistant Controller III, a career position within the bargaining unit with a salary of $2,793.00, approximately $1,700 less than what he received as Supervisor. According to the Change Report, the reassignment was dated effective January 1, 2001. *See* Docket No. 54 at ¶¶ 29–31.

The Plaintiff filed a claim of political discrimination and due process violations in state court alleging that, according to the SIFC's personnel rules and regulations, he had to be reinstated to a career position equal or similar to the last position he had held prior to holding the trust position. Accordingly, he requested to be reinstated to the Collection and Garnishment Division Supervisor position he held prior to holding the trust position of Special Aide I and resigning therefrom. *See* Docket No. 1 at ¶¶ 32–35. The defendants in said case—the SIFC, Villahermosa and

(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

The server did neither. "It is well established that individuals may not be served by merely leaving the complaint and summons at their place of business, unless an agent receives the documents, as provided by Rule 4(e)(2)."

*Perez–Sanchez v. Public Bldg. Authority,* 557 F.Supp.2d 224, 226 (D.P.R.2007) (internal citations omitted). The secretary is not an agent as defined by the Rules. Accordingly, this Court hereby **VACATES** the default entered against defendant Franco–Figueroa as well.

Lopez–Peña[3]—denied any discrimination, and instead requested the dismissal of Plaintiff's claims. The defendants argued that Plaintiff never became a regular employee in the Collection and Garnishment Division Supervisor position inasmuch as he never completed the probationary period for said position when he first held it. *See* Docket No. 54 at ¶ 37; Docket No. 22–2. On May 6, 2003, the state court dismissed Plaintiff's case on the grounds that defendants' actions were based on the SIFC's rules and regulations and their personnel decision was taken without a political discriminatory animus. *See* Docket No. 54 at ¶¶ 38–39. Although Plaintiff appealed, the state court of appeals affirmed the lower court's decision on November 4, 2005, and denied the Plaintiff's request for reconsideration a month later. *See* Docket No. 54 at ¶¶ 41–43.[4]

After giving the Court a background explanation of his previous political discrimination claim in state court, plaintiff Rivera goes on to allege in the complaint that on August 26, 2004, co-defendants Lopez–Peña and Villahermosa published a job posting to the managerial career position of Administrative Officer III. *See* Docket No. 54 at ¶ 54. Plaintiff alleged that he intended to apply. However, co-defendant Ortiz–Collazo cancelled the job posting a day later, on August 27, 2004. *See* Docket No. 54 at ¶¶ 55–56. Instead, codefendant Yadiraliz Colon–Lopez—a well-known PDP activist—was appointed to the job on February 1, 2005. *See* Docket No. 54 at ¶¶ 48, 57. According to Plaintiff, co-defendant Franco–Figueroa, the Ponce Regional Director, was responsible for this alleged discriminatory enforcement of the SIFC's personnel rules and regulations, inasmuch as Plaintiff claims that he had the right to bid for the position awarded to Colon–Lopez. *See* Docket No. 54 at ¶¶ 58–60. Also, Plaintiff explains that Colon–Lopez should not have been appointed to that position had the defendants applied the personnel rules and regulations to Colon–Lopez as they did to him with respect to the Supervisor position. *See* Docket No. 54 at ¶¶ 61–65.

Plaintiff Rivera also claims that on August 17, 2006, "defendants" appointed co-defendant Olga Fas–Santiago, a PDP activist, to the position of Collection and Garnishment Division Supervisor, Ponce Region, on a temporary basis. *See* Docket No. 54 at ¶¶ 69–70. Plaintiff alleges that he had been denied the appointment of Collection and Garnishment Supervisor since the year 2001, and instead, the "defendants" appointed Fas–Santiago as part of their scheme to discriminate against him because of his political affiliation. *See* Docket No. 54 at ¶¶ 71–74. Rivera specifically alleges that Fas–Santiago, "as part of this new scheme, conspired jointly with all codefendants to deny plaintiff Rivera the position of Collection and Garnishment Division Supervisor." *See* Docket No. 54 at ¶ 75.

Finally, Rivera–Feliciano contends that he has suffered and continues to suffer damages and lost wages as a result of defendants' illegal refusal to reinstate him to the managerial career position Collection and Garnishment Division Supervisor, or in the alternative, to allow him to bid

---

3. *See* Docket No. 22–2.

4. In the amended complaint, the Plaintiff alleges that the state court referred the case to the SIFC's Board of Appeals to determine if the plaintiff could be reinstated or not to a position within the bargaining unit, and that this issue was yet to be determined. *See* Docket No. 54 at ¶ 40, 44. However, immediately after this allegation, the Plaintiff admits he holds a position in the bargaining unit of the SIFC. *See* Docket No. 54 at ¶ 45. Accordingly, this Court finds that, pursuant to Plaintiff's own contentions, this issue is moot.

for the position of Administrative Officer III, which was granted to Colon–Lopez. *See* Docket No. 54 at ¶¶ 79–80.

## II. STANDARD OF REVIEW

"The general rules of pleading require a short and plain statement of the claim showing that the pleader is entitled to relief.... This short and plain statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Gargano v. Liberty Intern. Underwriters, Inc.*, 572 F.3d 45, 48 (1st Cir.2009) (internal citations and quotation marks omitted).

■■■ Motions to dismiss brought under FED.R.CIV.P. 12(b)(1) and 12(b)(6) are subject to the same standard of review. *See Negron–Gaztambide v. Hernandez–Torres*, 35 F.3d 25, 27 (1st Cir.1994). When ruling on a motion to dismiss for failure to state a claim, a district court "must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." *Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir.2009) (*citing LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 508 (1st Cir.1998)). Courts "may augment the facts in the complaint by reference to (i) documents annexed to the complaint or fairly incorporated into it, and (ii) matters susceptible to judicial notice." *Gagliardi v. Sullivan*, 513 F.3d 301, 306 (1st Cir.2008) (internal citations and quotation marks omitted). "Yet [the court] need not accept as true legal conclusions from the complaint or naked assertions devoid of further factual enhancement." *Maldonado v. Fontanes*, 568 F.3d 263, 266 (1st Cir.2009) (*citing Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1960, 173 L.Ed.2d 868 (2009)). Al-

though a complaint attacked by a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "does not need detailed factual allegations, ..., a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations and quotation marks omitted).

■■■ Moreover, "even under the liberal pleading standard of Federal Rule of Civil Procedure 8, the Supreme Court has ... held that to survive a motion to dismiss, a complaint must allege a plausible entitlement to relief." *Rodriguez–Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 95 (1st Cir.2007) (*citing Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (*citing Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, ..., on the assumption that all the allegations in the complaint are true (even if doubtful in fact)...." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (internal citations and quotation marks omitted). "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950.

## III. DISCUSSION

### A. Res Judicata and Collateral Estoppel

■■■ In their motion to dismiss, the moving defendants argue that Plaintiff's

claim of political discrimination and due process violations is exactly the same as the one brought and decided in state court. The appearing defendants contend that inasmuch as the underlying facts of this suit are the same as those before the state court, the present claim should be dismissed on res judicata grounds. The defendants attach to their motion to dismiss the state courts' judgments holding that Plaintiff was not entitled to be reinstated to the Supervisor of Collection and Garnishment position and that the application of the SIFC's rules and regulations to Plaintiff's particular case was not motivated by political discrimination. The defendants contend that Plaintiff's new disparate treatment theory is irrelevant and merely a subterfuge to revive his failed state-court political discrimination claim. *See* Docket No. 22.

In their opposition, the Plaintiffs respond that this new claim arises out of the fact that when a similar—if not identical—situation arose with co-defendant Yadiraliz Colon–Lopez, the defendants adopted a completely opposite position in their interpretation of the SIFC's rules and regulations to the one they applied in plaintiff Rivera's case. According to Plaintiffs, the defendants' shift in their application of the SIFC's rules and regulations was due to the fact that Colon–Lopez is a PDP affiliate. Plaintiffs thus argue that new facts have taken place that give rise to a new claim. In addition, the Plaintiffs contend that this Court must refrain from applying the doctrine of res judicata when its application would be inconsistent with the ends of justice or when it would lead to absurd outcomes, much like this case. *See* Docket No. 27. Finally, plaintiff Rivera also avers that defendants discriminated against him by depriving him of his right to compete for the position awarded to co-defendant Colon–Lopez without the required bidding process, thereby violating the Merit Princi-

ple incorporated in the SIFC's Personnel Rules and Regulations. *See* Docket No. 27 at page 8.

■ "Federal courts must give preclusive effect to state court judgments in accordance with state law." *SBT Holdings, LLC v. Town Of Westminster*, 547 F.3d 28, 36 (1st Cir.2008) (internal citations and quotation marks omitted). For purposes of determining the preclusive effect of a state court judgment in federal court, Puerto Rico is the functional equivalent of a state. *See Boateng v. InterAmerican Univ., Inc.*, 210 F.3d 56, 61 (1st Cir. 2000) (internal citations omitted).

In accordance with the foregoing, we now look to Puerto Rico res judicata principles. Under Puerto Rico law:

> [i]n order that the presumption of res adjudicata may be valid in another suit, it is necessary that, between the case decided by the sentence and that in which the same is invoked, there be the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such.

P.R. Laws Ann. tit. 31, § 3343. "Although this statute speaks of 'res adjudicata,' it encompasses both the doctrine of res judicata (i.e., claim preclusion) and the doctrine of collateral estoppel (i.e., issue preclusion), albeit with slightly different requirements for each." *R.G. Financial Corp. v. Vergara–Nunez*, 446 F.3d 178, 183 (1st Cir.2006) (*citing Baez–Cruz v. Munic. of Comerio*, 140 F.3d 24, 29 (1st Cir.1998)). When faced with the interpretation of the Puerto Rico res judicata statute, the First Circuit Court of Appeals has previously explained that a party asserting a defense of res judicata must establish the following three elements: "(i) the existence of a prior judgment on the merits that is 'final and unappealable'; (ii) a perfect identity of

thing or cause between both actions; and (iii) a perfect identity of the parties and the capacities in which they acted." *Coors Brewing Co. v. Mendez–Torres*, 562 F.3d 3, 20 (1st Cir.2009) (*citing R.G. Financial Corp.*, 446 F.3d at 183). Because it stems from the allegations in Plaintiffs' complaint that the state court judgment is final and unappealable, we will focus the discussion below on the two remaining requirements.

■ Puerto Rico's preclusion statute requires a perfect identity of the *factual cause*, not of the legal cause of action. *See Baez–Cruz*, 140 F.3d at 30. The Supreme Court of Puerto Rico has explained that "a 'cause' includes 'the principal ground, the origin or exceptions raised and decided, and it must not be mistaken for the means of proof nor for the legal grounds of the claims adduced by the parties.'" *Id.* (*citing Lausell Marxuach v. Diaz de Yanez*, 3 P.R. Offic. Trans. 742, 748 (1975)). Moreover, "Puerto Rico's courts have held that res judicata precludes the subsequent litigation of all claims that either were or could have been asserted in a prior action." *R.G. Financial Corp.*, 446 F.3d at 183 (internal citations omitted).

In this case, the state and federal action possess—*in part*—the perfect identity of thing or cause required by the Puerto Rico statute. Both the state and the federal political discrimination claim regarding the defendants' refusal to reinstate plaintiff Rivera to the Collection and Garnishment Division Supervisor position involve the same object or matter and share a common factual origin. The underlying facts giving rise to both actions are the same, and both actions entail a determination of the validity of the same employment transaction. That is, it would be impossible for Rivera to prevail on his federal claim that he should have been allowed to remain, and should be reinstated, in the Collection

and Garnishment Division Supervisor position without flatly contradicting the state court's affirmation of the defendants' decision to remove him thereof. Moreover, the fact that plaintiff Rivera now advances a different legal theory—namely, disparate treatment—does not undermine the identity of cause in both lawsuits inasmuch as both claims arise from a single nucleus of operative facts. *See Muniz Cortes v. Intermedics, Inc.*, 229 F.3d 12, 15 (1st Cir. 2000) (*citing Boateng v. InterAmerican Univ., Inc.*, 210 F.3d 56, 62 (1st Cir.2000) (holding that under Puerto Rico law there is no right to bring separate and successive suits on different legal theories arising out of a single nucleus of operative facts)). We conclude, therefore, that the requisite identity of "things" and "causes" is present.

■ On the question of identity of parties, the Puerto Rico res judicata statute directs that:

> [T]here is identity of persons whenever the litigants of the suit are legal representatives of those who litigated in the preceding suit, or when they are jointly bound with them or by the relations established by the indivisibility of prestations among those having a right to demand them, or the obligation to satisfy the same.

P.R. Laws Ann. tit. 31, § 3343. In its interpretation of this statute, the First Circuit Court of Appeals has explained that pursuant to Puerto Rico law "[t]he purpose of the perfect identity of parties requirement is to guarantee that the rights and obligations of a particular litigant will not be foreclosed without that litigant's knowledge or opportunity to participate." *R.G. Financial Corp.*, 446 F.3d at 185 (*citing Futura Dev. Corp. v. Centex Corp.*, 761 F.2d 33, 43 (1st Cir.1985)). "This is a privity requirement, and the Puerto Rico Supreme Court has taken a 'pragmatic

stand' on its construction." *Coors Brewing Co.*, 562 F.3d at 20 (internal citations omitted). Accordingly, the First Circuit has read the above-cited provision "as permitting issue preclusion to operate against a plaintiff who adds defendants in the second action." *Baez–Cruz*, 140 F.3d at 29 (internal citations omitted). A shared obligation between the defendants in the previous action and the newly added defendants to satisfy the same claim is sufficient to allow preclusion.

In the case at hand, the plaintiff Rivera names the SIFC, Villahermosa and Lopez–Peña—the same defendants as in the state court suit—as well as other individuals as co-defendants in his claim to be reinstated to the Supervisor position. Nevertheless, the fact that the Plaintiff has included additional defendants in the present suit does not destroy the identity of parties requirement inasmuch as the additional defendants share the same liability as the previous ones. Accordingly, under Puerto Rico law, the addition of new defendants to the federal claim does not destroy the defendants' ability to raise the res judicata defense. *See Baez–Cruz*, 140 F.3d at 29 ("We have read this provision as permitting issue preclusion to operate against a plaintiff who adds defendants in the second action.").

As per the foregoing discussion, this Court finds that the fact that the Commonwealth court's judgment in a suit involving identical parties, causes, and things is now final and unappealable forces us to conclude that the doctrine of res judicata bars the present action.

 Finally, the Plaintiffs contend that they should be exempt from the usual rules of preemption on the ground that its application would defeat the ends of justice. *See* Docket No. 27 at pages 2–4. "Courts should therefore be 'loathe' to disturb prior decisions in a case." *Negron–*

*Almeda v. Santiago*, 579 F.3d 45, 51 (1st Cir.2009).

Nevertheless, courts may reopen a matter previously decided on a showing of exceptional circumstances—a threshold which, in turn, demands that the proponent accomplish one of three things: show that controlling legal authority has changed dramatically; proffer significant new evidence, not earlier obtainable in the exercise of due diligence; or convince the court that a blatant error in the prior decision will, if uncorrected, result in a serious injustice.

*Id.* at 51–52 (internal citations and quotation marks omitted).

"We see nothing in the facts of this case to support such an exception." *Muniz Cortes*, 229 F.3d at 15. The relevant legal authority has not changed; the "new" facts that took place on February of 2005, which according to Plaintiffs configure new evidence of disparate treatment, could have been presented to the local court of appeals before its ruling on November of 2005; and "no manifest injustice looms," *U.S. v. Bell*, 988 F.2d 247, 251. (1st Cir. 1993). With this new claim, Plaintiffs essentially attempt to have a "second bite at the apple" on the theory of this so-called "new evidence" of discrimination. Plaintiffs freely chose to litigate their claim in the superior court, lost on appeal and failed to seek review from the Supreme Court of Puerto Rico. "[P]ublic policy does not require giving them a chance to revisit those choices." *Muniz Cortes*, 229 F.3d at 15.

A review of the judgment entered by the local court leads us to conclude that plaintiff Rivera is barred from relitigating his claim with regards to his removal from the Collection and Garnishment Division Supervisor position. Plaintiff already had a full and fair opportunity to litigate his claim, and the local court's judgment con-

stitutes a final adjudication on the merits. Therefore, Plaintiff's Section 1983 claim and request to be reinstated in said position is hereby **DISMISSED WITH PREJUDICE.**

## B. Remaining Claims

Notwithstanding the foregoing, in the case now before this Court, plaintiff Rivera included a claim that was not, and could not have been litigated in his previous state-court claim: that defendants refused to allow him to bid for the position of Administrative Officer III, a position that was later granted to co-defendant Colon–Lopez, a PDP activist, on February 1, 2005. Plaintiff Rivera now asserts that defendants violated his right to freedom of speech and political affiliation under the First Amendment and his due process and equal protection rights under the Fifth and Fourteenth Amendments by essentially denying him the opportunity to compete for said position. *See* Docket No. 54.

### 1. Fifth Amendment

■ At first glance, this Court must dismiss Plaintiff's claim under the Fifth Amendment. The due process clause of the Fifth Amendment provides that: "No person shall ... be deprived of life, liberty, or property, without due process of law...." U.S. CONST. amend. V. It is well-settled that the Fifth Amendment "applies to actions of the federal government, not those of private individuals." *See Gerena v. Puerto Rico Legal Services, Inc.,* 697 F.2d 447, 449 (1st Cir.1983) (*citing Public Utilities Commission v. Pollak,* 343 U.S. 451, 461, 72 S.Ct. 813, 96 L.Ed. 1068 (1952)). Here, the complaint is brought against state and not federal actors. Accordingly, the Court hereby **DISMISSES** *sua sponte* Plaintiff's Fifth Amendment claim. *See also Martinez–Rivera v. Sanchez Ramos,* 498 F.3d 3, 8–9 (1st Cir.2007) (affirming a *sua sponte* dismissal of plaintiffs' claims under the Fifth Amendment because the defendant police officers where state actors and not federal actors).

### 2. Fourteenth Amendment (Due Process)

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. CONST. amend. XIV, § 1. "This guarantee has both substantive and procedural components." *Pagan v. Calderon,* 448 F.3d 16, 32 (1st Cir.2006).

■ "A plaintiff asserting a procedural due process claim must show that [he] had a property interest as defined by state law and that the defendant, acting under color of state law, deprived him of that property interest without constitutionally adequate process." *Torres–Rivera v. Puerto Rico Elec. Power Authority,* 598 F.Supp.2d 250, 255 (D.P.R.2009) (*citing Santiago–Perez v. State Ins. Fund Corp.,* 534 F.Supp.2d 233, 241 (D.P.R.2007)). To have a constitutionally protected property interest in a benefit, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 576, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

In a previous action before this District Court, where plaintiff alleged he had a property interest in interviewing for an open position and that defendants' actions deprived him of said property interest, this Court held that plaintiff had no property interest in interviewing for a position. *See Santiago–Perez,* 534 F.Supp.2d at 241. The Court held that because the plaintiff was not deprived of a constitutionally protected right, he did not have a valid cause

of action for a violation of his procedural due process rights, and thus, dismissed his claim. *See id.*

Now, with respect to the substantive component of the Due Process Clause, "[t]he substantive due process guarantee functions to protect individuals from particularly offensive actions on the part of government officials, even when the government employs facially neutral procedures in carrying out those actions." *Pagan v. Calderon,* 448 F.3d at 32 (*citing Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)). "A substantive due process claim requires allegations that the government conduct was, in and of itself, inherently impermissible irrespective of the availability of remedial or protective procedures." *Maymi v. Puerto Rico Ports Authority,* 515 F.3d 20, 30 (1st Cir.2008) (*quoting Amsden v. Moran,* 904 F.2d 748, 753 (1st Cir.1990) ("state action must in and of itself be egregiously unacceptable, outrageous, or conscience-shocking")). "The state conduct itself must be so brutal, demeaning, and harmful that it is shocking to the conscience." *Maymi,* 515 F.3d at 30 (internal citations omitted).

In their motion to dismiss, the appearing defendants have not requested the dismissal of plaintiff Rivera's due process claim regarding the defendants' alleged failure to allow him to bid for the position of Administrative Officer III. Nevertheless, the First Circuit Court of Appeals has held that a dismissal *sua sponte,* that is, a dismissal on the court's initiative, without affording the plaintiff either notice or an opportunity to amend the complaint, may stand "[i]f it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile...." *Martinez–Rivera,* 498 F.3d at 7 (*quoting Gonzalez–Gonzalez v. United States,* 257 F.3d 31, 37 (1st Cir.2001)).

In the case at hand, plaintiff Rivera claims that he wanted to, and had the right to bid for the Administrative Officer III position, but was preventing from doing so because the job posting was cancelled and the position was later awarded to co-defendant Yadiraliz Colon–Lopez, a well-known PDP activist. *See* Docket No. 54. Since, according to the above-cited caselaw, Rivera was not deprived of a constitutionally protected right, it is clear that he has no cause of action for a violation of his procedural due process rights. In addition, Rivera's allegations, even if true, are insufficient to cross the constitutional threshold for a substantive due process claim to be configured. Accordingly, this Court finds that a *sua sponte* dismissal of Plaintiff's due process claim is warranted.

### 3. Fourteenth Amendment (Equal Protection)

In the amended complaint, plaintiff Rivera makes a perfunctory reference to his rights to equal protection in the following allegations:

62. Defendants, with the clear intention to discriminate against plaintiff for being an activist of the New Progressive Party, denied him the right and the opportunity to be equally and fairly treated in the application of article 9.4 [of the SIFC's personnel rules and regulations].

. . .

96. Defendants intentionally, or with deliberate indifference and callous disregard of Plaintiff's rights, deprived Plaintiff of his right to a due process of law and equal protection of the law through a practice of discrimination.

*See Amended Complaint,* Docket No. 54.

"Although the court welcomes what it will term 'imaginative' lawyering from time to time, novel arguments must

still be based on a firm theoretical framework and be supported by non-conclusory factual allegations suggestive of a plausible claim to relief to survive early dismissal." *Febus–Cruz v. Sauri–Santiago*, 652 F.Supp.2d 140, 152 (D.P.R.2009). Moreover, "so long as [a plaintiff's] allegations of political discrimination fit within the contours of the First Amendment, they are, a fortiori, insufficient to ground a claim that the politically-inspired misconduct violated equal protection guarantees." *Pagan v. Calderon*, 448 F.3d at 37 (*citing Ruiz–Casillas v. Camacho–Morales*, 415 F.3d 127, 134 (1st Cir.2005) (holding that an appellant's equal protection claim, which was premised on allegations of political discrimination, "flounders, as it is a mere restatement of [her] failed First Amendment claim")).

 In the case at hand, although the amended complaint references a violation of Rivera's right to equal protection, "it provides no specific factual allegations to distinguish the equal protection claim from [plaintiff's] right to political affiliation claim." *Febus–Cruz*, 652 F.Supp.2d at 152. A plaintiff's "failure or inability to distinguish his equal protection claim from his political affiliation claim is dispositive of the equal protection claim; where there is no distinct basis for alleging an equal protection violation, that claim is subsumed by the First Amendment claim." *Id.*

 "As a general matter, sua sponte dismissals are strong medicine, and should be dispensed sparingly." *Martinez–Rivera*, 498 F.3d at 7 (internal citations and quotation marks omitted). In fact, the general rule is "that in limited circumstances, sua sponte dismissals of complaints under Rule 12(b)(6) . . . are appropriate, but that such dismissals are erroneous unless the parties have been afforded notice and an opportunity to amend the complaint or otherwise respond." *Id.* (internal citations and quotation marks omitted). Notwithstanding, "a sua sponte dismissal entered without prior notice to the plaintiff may be proper in relatively egregious circumstances." *Id.* As previously mentioned, "[w]here the allegations in the complaint, viewed in the light most favorable to plaintiff, are patently meritless and beyond all hope of redemption, i.e., where it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then such a dismissal may stand." *Green v. Concord Baptist Church*, 313 Fed.Appx. 335, 336 (1st Cir.2009) (internal citations and quotation marks omitted).

This Court is of the opinion that plaintiff Rivera's equal protection claim, as alleged, is meritless, and thus, we're tempted to rule an outright dismissal of his claim sua sponte despite the moving defendants' omission to request it in their motion to dismiss. However, this Court cannot ignore the First Circuit's clear directive to at least afford the plaintiff notice.

 Notwithstanding, with respect to giving a plaintiff an opportunity to amend the complaint, Rule 15(a)(2) of the Federal Rules of Civil Procedure states, in relevant part, that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." FED.R.CIV.P. 15(a)(2). Although the rule reflects a liberal amendment policy, the First Circuit Court of Appeals has held that "the district court enjoys significant latitude in deciding whether to grant leave to amend, and we defer to the district court's decision if any adequate reason for the denial is apparent on the record." *U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 48 (1st Cir.2009) (internal citations and quotation marks omitted) (holding district court did not

abuse its discretion in not granting plaintiffs leave to amend complaint for a third time). Accordingly, leave should be freely given in the absence of apparent reasons, such as: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

 After careful thought, this Court finds that allowing the Plaintiffs to amend their complaint once again, that is, to file a fifth version of their complaint in order to cure its deficiencies, is not a viable or fair alternative. Influencing our conclusion is the fact that "[t]here are few tenets so well established in American jurisprudence as the proposition that a client is bound by the mistakes of its chosen counsel." *See Chestnut v. City of Lowell,* 305 F.3d 18, 26 (1st Cir.2002). This Court has granted Plaintiffs' attorney's multiple requests to amend the pleadings, and the Plaintiffs, along with their legal counsel, have so far failed to take advantage of this Court's graciousness.

Notwithstanding, although Plaintiffs will not be allowed to amend their complaint, they will be allowed to respond to this Court's request that they show cause within **five (5) days** of this order as to why we should not dismiss *sua sponte* plaintiff Rivera's Fourteenth Amendment equal protection claim. The defendants shall then have **five (5) days** to respond.

### 4. First Amendment (Political Discrimination)

 Plaintiff Rivera also brings suit for the violation of his constitutional rights under the First Amendment, which "insulates public employees who hold non-policymaking positions from the vicissitudes of personnel decisions rooted in partisan political concerns." *Bergeron v. Cabral,* 560 F.3d 1, 7 (1st Cir.2009) (*citing Rutan v. Repub. Party of Ill.,* 497 U.S. 62, 74–76, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990)). *See also Padilla–Garcia v. Guillermo Rodriguez,* 212 F.3d 69, 74 (1st Cir.2000). Section 1983 "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 924, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) (internal quotation marks omitted). "A plaintiff bringing a political discrimination claim under the First Amendment bears the burden of producing sufficient evidence from which a jury may infer that plaintiff's constitutionally protected conduct was a substantial or motivating factor behind the adverse employment action." *Torres–Rivera,* 598 F.Supp.2d at 255–256 (*citing Maymi,* 515 F.3d at 28).

 To establish a *prima facie* case of political discrimination, a claimant must show that: "(1) the plaintiff and the defendant belong to opposing political affiliations; (2) the defendant has knowledge of the plaintiff's affiliation; (3) a challenged employment action occurred; and (4) political affiliation was a substantial or motivating factor behind it." *Martinez–Velez v. Rey–Hernandez,* 506 F.3d 32, 39 (1st Cir. 2007) (internal citations and quotation marks omitted). Although discharge is the paradigmatic example of an adverse employment action, acts short of outright dismissal may be sufficiently adverse to undergird claims for political retaliation. *See Bergeron,* 560 F.3d at 8 (internal citations omitted). "An adverse employment action includes not only a discharge or a

demotion, but also a government entity's refusal to promote, transfer, recall after a layoff, or even hire an employee." *Torres–Rivera*, 598 F.Supp.2d at 256 (internal citations omitted).

In the instant case, Plaintiff claims that defendants, acting under color of state law, violated his First Amendment rights by denying him the opportunity to bid for the managerial career position of Administrative Officer III because of his political affiliation. Although the appearing defendants have not requested the dismissal of this particular claim, this Court finds that Plaintiff's general and conclusive allegations do not "pass the test for sufficiency set out in *Iqbal*." *Febus–Cruz*, 652 F.Supp.2d at 149.

For example, the allegations against co-defendants Lopez–Peña and Villahermosa are limited to the fact that they published the job posting for the Administrative Officer III position. *See* Docket No. 54 at ¶ 54. With regards to co-defendant Ramos–Navarro, there are absolutely no allegations against him other than the paragraph in the complaint identifying him as a codefendant in the case (Section B, ¶ 4). Moreover, the allegations against Barros–Lopez are limited to the fact that he appointed co-defendant Yadiraliz Colon–Lopez to the position of Insurance Specialist on a temporary basis back in June of 2002. *See* Docket No. 54 at ¶ 49. Regarding Plaintiff's claim of discrimination against co-defendant Colon–Lopez, it is basically limited to the fact that she was appointed Administrative Officer III in February of 2005 without allegedly going through the competition process established by the merit principle for managerial career positions. *See* Docket No. 54 at ¶¶ 57–59, 64. The allegations against co-defendant Fas–

Santiago are circumscribed to the fact that she was appointed Collection and Garnishment Division Supervisor, despite the Plaintiff's desire for the position. *See* Docket No. 54 at ¶¶ 69–74. Rivera's allegations against Fas–Santiago are based on some sort of conspiracy theory to deny Plaintiff the position and allow Fas–Santiago to obtain work experience in said post.[5]

As opposed to Plaintiff's claims against co-defendants Lopez–Peña, Villahermosa, Ramos–Navarro, Barros–Lopez, Colon–Lopez and Fas–Santiago, the allegations against Ortiz–Collazo and Franco–Figueroa are at least peripherally related to Plaintiff's remaining First Amendment claim. With regards to co-defendant Ortiz–Collazo, Personnel Director of the SIFC, the Plaintiff simply claims that he cancelled the job posting for the Administrative Officer III position. *See* Docket No. 54 at ¶ 56. Finally, the Plaintiff's claim against co-defendant Franco–Figueroa is limited to the following allegation: "Manuel Franco Figueroa, Ponce Regional Director was responsible of the discriminatory enforcement of the ... Personal Rules and Regulations of the State Insurance Fund Corporation." *See* Docket No. 54 at ¶ 58.

This Court first notes that after a thorough reading of the final amended complaint, we are still in the dark as to most of co-defendants' political affiliation, and as to whether or not they knew of Plaintiff's and how. Plaintiff's general allegation that he is an active member of the NPP and that his affiliation is well known by the defendants (¶ 1) simply will not do. *See Ashcroft v. Iqbal*, 129 S.Ct. at 1949 ("A pleading that offers labels and conclusions or a

5. Regardless, this Court has already determined that Plaintiff's claim regarding his removal from the Collection and Garnishment Division Supervisor position was already decided by a state court in a final and unappealable adjudication on the merits.

formulaic recitation of the elements of a cause of action will not do.").

 Moreover, this Court finds that Plaintiff's theory of political discrimination, as set out in the complaint against the individual defendants, is deficient. Although this Court does not discard that a constitutional right violation may have taken place by the cancellation of the Administrative Officer III job posting and the appointment of co-defendant Colon–Lopez without the required application process, the individual defendants' participation, as alleged, is too generic and does not make any reference to specific acts by the individual defendants to tie them to any wrongdoing and make Plaintiff's claim "plausible on its face." *See id.* The Plaintiff simply expects this Court to make farfetched inferences and accept his legal conclusions that defendants discriminated against him because of his political affiliation as true, without bolstering his claim with enough particularity and factual matter. As established by the Supreme Court in *Iqbal,* "the tenet that a court must accept as true all of the allegations in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949.

As stated above, this Court will not allow Plaintiffs to amend their complaint once again. In the absence of a properly articulated claim, Plaintiffs are hereby ordered to respond to this Court's request that they show cause within **five (5) days** of this order as to why we should not dismiss *sua sponte* Rivera's remaining First Amendment political discrimination claim against co-defendants Ortiz–Collazo and Franco–Figueroa inasmuch as, in accordance with the foregoing discussion, we find that the claims against codefendants Lopez–Peña, Villahermosa, Ramos–Navar-

ro, Barros–Lopez, Colon–Lopez and Fas–Santiago are incurable. The defendants shall respond within **five (5) days** thereof.

## C. Sanctions

The Court, under certain conditions, may impose an appropriate sanction upon the attorney, law firm, or party that has violated subdivision (b) of Federal Rule of Civil Procedure 11. "Rule 11(b) proscribes not only written arguments made with any improper purpose, but also advancing frivolous arguments, as well as the assertion of factual allegations without evidentiary support or the likely prospect of such support." *Citibank Global Markets, Inc. v. Rodriguez Santana,* 573 F.3d 17, 32 (1st Cir.2009) (internal citations and quotation marks omitted). Federal Rule of Civil Procedure 11(b) specifically states:

> By presenting to the court ... a pleading, written motion, or other paper, an attorney ... is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, [that]—
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; ....

FED. R.CIV.P. 11(b).

The First Circuit Court of Appeals has held that Rule 11(b) is not a strict liability

provision and a showing of at least culpable carelessness is required before a violation of the Rule can be found. *See Citibank Global Markets, Inc.*, 573 F.3d at 32 (internal citations omitted). The First Circuit has also been "careful to make clear that the mere fact that a claim ultimately proves unavailing, without more, cannot support the imposition or Rule 11 sanctions." *Id.*

■ Moreover, pursuant to Rule 11, "[a] motion for sanctions must be filed separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b)." FED. R.CIV.P. 11(c)(1)(A). Rule 11 also contains a "safe harbor" provision that requires movants to first serve the opposing counsel or party with the motion for sanctions, and only present such motion to the court if, "within 21 days after service of the motion ... the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." *Id.;* see also Advisory Committee's Note to FED. R.CIV.P. 11(c). "[T]he object of the safe harbor is to allow a party to privately withdraw a questionable contention without fear that the withdrawal will be viewed by the court as an admission of a Rule 11 violation." *Young v. City of Providence ex rel. Napolitano,* 404 F.3d 33, 39 (1st Cir.2005). "The court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion." FED.R.CIV.P. 11(c)(1)(A).

■ With the above-stated standards in mind, this Court finds that although defendants here may have a valid claim for sanctions, they failed to file an appropriate motion in accordance with the procedures specified in Rule 11. *See Ramallo Bros. Printing, Inc. v. El Dia, Inc.,* No. 06–1187, 2006 WL 2524222, at *7 (D.P.R. August 29, 2006) (*citing McLaughlin v. Bradlee,* 602

F.Supp. 1412, 1417 (D.D.C.1985) ("It is especially appropriate to impose sanctions in situations where the doctrines of *res judicata* and collateral estoppel plainly preclude relitigation of the suit.")). Instead of serving Plaintiffs with a separate motion and then filing it twenty-one (21) days later with the Court, as required by Rule 11, defendants merely inserted their request for sanctions in their motion to dismiss. *See id.* Because defendants failed to comply with the "safe harbor" provision in Rule 11, their request for sanctions is hereby **DENIED.** *See Esso Standard Oil Co. v. Rodriguez Perez,* No. 01–2012, 2005 WL 114080 at *10 (D.P.R. Jan. 20, 2005) (failure to comply with the safe harbor provision justifies denial of the motion for sanctions). Moreover, in light of the fact that plaintiff Rivera presented a claim for relief that was not asserted before state court, this Court finds that Plaintiff's claim was not *entirely* precluded.

## IV. CONCLUSION

For the reasons stated above, this Court hereby **GRANTS** defendants' motions to dismiss (Dockets No. 16, 22). Accordingly, plaintiff Rivera's Section 1983 claim of political discrimination regarding his removal from the Collection and Garnishment Division Supervisor position, as well as his due process claims pursuant to the Fifth and Fourteenth Amendment, are hereby **DISMISSED WITH PREJUDICE.** In addition, Plaintiffs' claims against codefendants Lopez–Peña, Villahermosa, Ramos–Navarro, Barros–Lopez, Colon–Lopez and Fas-Santiago are also hereby **DISMISSED WITH PREJUDICE.**

Plaintiffs are hereby ordered to show cause within **five (5) days** of this order as to why this Court should not dismiss *sua sponte* plaintiff Rivera's remaining First Amendment and Fourteenth Amendment

(equal protection) claims. The Plaintiffs shall keep in mind that the opportunity to show cause why their case should not be dismissed is not, by any means, a chance to bolster their allegations in the amended complaint, and thus, amend *de facto*. The remaining defendants are granted **five (5) days** to respond. Additionally, this Court hereby **VACATES** the default entered against co-defendant Franco–Figueroa

**IT IS SO ORDERED.**