Laura RODRIGUEZ–MACHADO,
Plaintiff,

v.

DEPARTMENT OF VETERANS
AFFAIRS, et al.,
Defendants.

Civil No. 10–1980 (DRD).

United States District Court,
D. Puerto Rico.

Feb. 28, 2012.

Elaine Rodriguez–Frank, San Juan, PR, for Plaintiff.

Isabel Munoz–Acosta, United States Attorneys Office, San Juan, PR, for Defendants.

---

**OPINION AND ORDER**

DANIEL R. DOMINGUEZ, District Judge.

Pending before the court is Defendant's Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure (Docket No. 14). For the reasons set forth below, the Motion for Summary Judgment is **GRANTED** and the complaint is hereby **DISMISSED** with prejudice.

**I. PROCEDURAL BACKGROUND**

On October 8, 2010, Laura Rodríguez–Machado filed a complaint against her employer, the Department of Veterans Affairs and Mr. Erik K. Shinseki, Secretary of the Department of Veterans Affairs [1] (collectively, "VA"), under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, 29 U.S.C.A. §§ 621 et seq. ("ADEA"), and the Constitution of the United States of America. (Docket No. 1). The complaint was subsequently amended on February 16, 2011 (Docket No. 7). Plaintiff claims that she was the victim of discrimination on the basis of her age and that one or more of her immediate supervisors created against her a hostile work environment. Plaintiff further claims that she was the victim of retaliation for complaining to VA officials about the age discrimination, for filing two complaints with the U.S. Equal Employment Opportunity Commission, San Juan Local Office ("EEOC") and for filing the complaint in the instant case.

On June 3, 2011, VA filed a Motion for Summary Judgment (Docket No. 14) alleging, in summary, that Plaintiff's allegations do not establish a case of age discrimination or that VA took retaliatory actions against Plaintiff for engaging in protected activity under ADEA. Further, Defendants argue that Plaintiff failed to exhaust administrative remedies in connection with the retaliatory charges that allegedly occurred between September 16, 2010 and October 4, 2010 because the EEOC complaint filed on account of such allegations was procedurally dismissed as a result of the filing of the instant case. (Docket No. 14).

**II. FACTUAL BACKGROUND**

Below is a summary of the events that lead to the filing of the instant complaint,

---

**1.** The Court notes that Plaintiff does not state whether co-defendant Erik K. Shinseki is sued solely in his official capacity, or in his official and personal capacities. Nonetheless, because there is no personal liability under ADEA or under Title VII, the Court will consider that Mr. Shinseki is sued solely in his official capacity as Secretary of the Department of Veteran's Affairs. *See Fantini v. Salem State College,* 557 F.3d 22, 28–31 (1st Cir.2009) (no personal liability can be attached to agents under ADEA or Title VII).

as alleged in the parties' statements of uncontested facts and accompanying documents thereto (Docket Nos. 15 and 24).

Plaintiff has been an employee of VA since June of 1976, specifically at the VA Caribbean Healthcare System ("VACHS") in San Juan, Puerto Rico, employed as a staff nurse. At the time the events that give rise to the instant complaint took place, Plaintiff was fifty-six (56) years of age and was working as a Health System Specialist GS–13.

On July 28, 2008, Plaintiff informed Ms. Evelyn Ramos (Plaintiff's immediate supervisor) that an employee of another department had complained to Plaintiff about his own supervisor and that he had requested Plaintiff's assistance in resolving his grievance. According to Plaintiff, Ms. Ramos, who was fifty-seven (57) years old at the time, became upset and hostile toward Plaintiff and instructed her not to entangle herself in such office gossips. *See* Docket No. 24, page 5.

Plaintiff avers that, in retaliation for notifying Ms. Ramos of a fellow employee's complaints, Ms. Ramos assigned Plaintiff additional tasks which were the responsibility of an employee that was no longer working under Ms. Ramos' supervision. This assignment was additional to Plaintiff's regular workload. Although Ms. Ramos distributed all of the tasks among various employees (including two co-workers that were approximately forty (40) years old at the time), Plaintiff claims that she received the longest and most complicated of them and that the tasks she received required immediate action. *See* Docket No. 24, page 6. Notwithstanding, Plaintiff admitted that when she requested assistance from Ms. Ramos because she was overwhelmed with the workload, Ms. Ramos re-distributed the assignments between other members of the staff. Docket Nos. 15 and 24.

On August 4, 2008, two of Plaintiff's peer co-workers, not decision-makers as to Plaintiff, asked Plaintiff when she was planning on retiring. At the time, both employees were forty (40) years of age. Plaintiff claims that she felt so overwhelmed by the intrusion that she required psychological assistance and that she contacted her partner, Dr. Nieves (who also works at VACHS), to let her know of the situation. Allegedly, Plaintiff left for the rest of the day to seek medical attention at the Employee Assistance Program and asked Dr. Nieves to inform Ms. Ramos of the incident. Upon Plaintiff's return to work the following day, Plaintiff claims that Ms. Ramos yelled at her and questioned her as to failing to notify her absence during the previous day.

Plaintiff further complained that Ms. Ramos had yelled at her on various other occasions, mostly related to administrative matters and miscommunication between the two with regards to the preparation and execution of the Emergency ICS Activation Plan and for Plaintiff's failure to promptly make travel arrangements for a training held overseas. Plaintiff alleges that some of Ms. Ramos' outbursts occurred in the presence of other VA employees and Plaintiff's peers.

On September of 2008, Plaintiff requested a meeting with Ms. Nancy Reissner, Acting Director of VACHS, to complain about Ms. Ramos' alleged hostility against Plaintiff and Plaintiff's mental health condition as a result of such hostility. Both Ms. Ramos and Ms. Reissner were surprised to learn about Plaintiff's complaints of hostile work environment. During the meeting, Ms. Reissner suggested that they mediate Plaintiff's complaint, but Plaintiff admitted that she did not accept mediation. As a result, Plaintiff was assigned to work under the direct supervision of Ms. Reissner. Docket Nos. 15 and 24.

Around the same time, Ms. Ramos allegedly sent Plaintiff an email requesting her assistance in developing the job description for the position "Veteran's Equitable Resource Allocation Coordinator." In the email, Ms. Ramos suggested that Plaintiff apply to such position. Plaintiff was offended by Ms. Ramos' suggestion and interpreted the remark as a signal of Ms. Ramos letting Plaintiff know that she wished Plaintiff out of her current position.

On December 2, 2008, Plaintiff claims to have applied for a higher-grade position within VA. Ms. Reissner was the VA official responsible for selecting the candidate for such position. Plaintiff alleges that the position was awarded to Ms. Nayda Ramírez, whose educational background is in a subject unrelated to medical and/or nursing sciences (i.e. decorative arts). Plaintiff further alleges that Ms. Reissner did not appoint Plaintiff for the position because, in retaliation for Plaintiff's complaint to Ms. Reissner about Ms. Ramos, Ms. Reissner gave Plaintiff a poor performance evaluation in the criteria for "ability to establish and maintain relationships with other employees of the Agency," "ability to communicate" and "ability to supervise, plan and direct the work of subordinate". Furthermore, Plaintiff claims that such evaluation was the result of Ms. Reissner's failure to investigate Plaintiff's complaints of hostile work environment. Ms. Reissner denied Plaintiff's allegations and having knowledge about Plaintiff's application for any vacant positions during Ms. Reissner's term as Acting Director of VACHS.

On December 16, 2008, during a meeting of the VACHS' Administrative Executive Board, Ms. Ramos yelled at Plaintiff before all of the attendees when she stepped into the meeting and asked Plaintiff to leave because her presence was not required. Plaintiff alleges that she felt humiliated and embarrassed by Ms. Ramos' outburst particularly because Plaintiff was a member of the board and she had attended all prior meetings since her appointment to the same.

On December 22, 2008, despite the apparent availability of administrative personnel, Plaintiff alleges that Ms. Ramos violently banged the door at Plaintiff's office to assign Plaintiff secretarial duties that were not within her responsibilities and which could have been performed by the administrative personnel.

On January 22, 2009, Ms. Reissner terminated her employment at VACHS, for which Plaintiff was again under the direct supervision of Ms. Ramos. Ms. Ramos held a meeting with Plaintiff to discuss Plaintiff's thoughts about working under Ms. Ramos' supervision again. The day after such meeting, Ms. Ramos sent Plaintiff an email with a document entitled "Memo of Instructions." In said email, Ms. Ramos allegedly notified Plaintiff that if she was unable to abide by such instructions, Ms. Ramos would have to look for a solution to their working relationship besides mediation, as Plaintiff had declined to mediate before.

On March 30, 2009, Plaintiff filed a complaint with the EEOC, for alleged discrimination on the basis of her age in violation of ADEA for events that occurred during the period of July 28, 2008 through January 22, 2009 ("First EEOC Complaint").

Around the time of Plaintiff's filing of the First EEOC Complaint, Ms. Ramos requested Plaintiff to provide assistance to an already assembled work team in connection with the investigation and resolution of certain complaints regarding the Reusable Medical Equipment ("RME") at VACHS. On June 9, 2009, the RME team submitted a written report attesting to VACHS' completion of the issues identified and complaints filed regarding the RME. An internal investigation soon developed

against three members of the RME team, including Plaintiff, for allegedly failing to report known failures in the implementation of the standardized procedures regarding RME. The investigation of Plaintiff's conduct while assigned to the RME team was related to her allegedly sending advance notices to various areas that were scheduled to receive surprise visits by the Veterans Integrated Service Network management personnel. (Docket No. 15–5, page 5 and Docket No. 27, page 4). The investigation was conducted by the Office of the Inspector General ("OIG") and the Administrative Investigative Board ("AIB") on account of the events and allegations described above. Plaintiff further alleged that only three individuals from the entire RME team were under investigation, that out of those three individuals under investigation, only two were detailed to jobs outside of VACHS, which happened to be female.[2] However, Plaintiff only provided evidence of her own detail, thereby failing to provide evidence that another employee that was subject to the referenced investigation was placed on detail related to age.

On September 18, 2009, Plaintiff was detailed [3] to work at the VA facilities of Bay Pines, Florida, pending the results of the referenced investigation. The detail was originally scheduled to last sixty (60) days, which would end by November 23, 2009, but it was twice extended (on December 1, and again on January 15, 2010) [4] until the OIG and AIB submitted the results of their investigation.[5] Notwithstanding the two extensions of her detail, Plaintiff returned to Puerto Rico by November of 2009 (after the original 60–day period), and was allowed to work remotely from Puerto Rico to complete her Florida detail in consideration for Plaintiff's health conditions and doctor's appointments in Puerto Rico. Plaintiff further alleges in support of her retaliation charges that she was notified that she would not be subject to a performance evaluation for the work performed while she was on detail and that the evaluation would be on hold until the investigation was finalized.[6] *See* Docket

2. Despite Plaintiff's allegation insinuating discrimination on the basis of race, sex, and national origin, the record shows that the RME team members included individuals who were also Hispanic females that were not subject to the referenced investigation. Also, no allegation was made or evidence provided as to any of such individual's ages. *See* Docket No. 15–5.

3. According to the "Guide to Processing Personnel Actions," a "detail" is a temporary assignment of an employee to a different position for a specified period, with the employee returning to his or her regular duties at the end of the assignment. An employee who is on detail is considered for pay and strength count purposes to be permanently occupying his or her regular position. *See* U.S. Office of Personnel Management, Guide to Processing Personnel Actions (Update 56, dated 1/01/2012), available at http://www.opm.gov/feddata/gppa/gppa.asp.

4. As referenced in the record, the VA followed the procedure indicated in their VA Handbook 5005, in 5 C.F.R. Part 300 and in 5 U.S.C. § 3341. *See* Docket No. 15–5, page 9. The Court takes judicial notice of the procedure included in Part III, Chapter 4, Paragraphs 12 and 13 of the VA Handbook .5005/13 in connection with the facility Director's authority to detail employees to various positions within their facilities for a period not to exceed 90 days, and to extend such detail in 90–day increments when the circumstances warrant such extensions.

5. Plaintiff was later notified by the Associate Director of the Primary Care Unit that the investigation report had no findings of wrongdoing by Plaintiff.

6. The record shows that Plaintiff received a copy of her performance evaluation for the tasks performed while on detail at Florida almost one year *after* the detail had concluded **because her evaluator had retired.** *See* Docket No. 26–18.

No. 15–5. As a result of Plaintiff's assignment to Florida, Plaintiff alleges that she had to relocate, return the keys to her office in Puerto Rico and her parking privileges were terminated.[7] Also, the network access to her computer, pen drive and smart phone were removed while she was on assignment in Florida. While the computer access was restored around October of 2010, Plaintiff's parking privileges were never restored.

On January 29, 2010, Plaintiff filed another complaint with the EEOC alleging that she was the victim of retaliatory activities for the filing of the First EEOC Complaint ("Second EEOC Complaint"). In the Second EEOC Complaint, Plaintiff alleged that the retaliation consisted on her detail to Florida on September 18, 2009, the subsequent extensions on December 1, 2009 and January 15, 2010, and the notification that she would not be subject to performance evaluation despite having received positive feedback for her work.[8]

On July 14, 2010, the EEOC issued its final decision and corresponding right-to-sue letter in connection with the First EEOC Complaint, whereby the administrative judge found that Plaintiff failed to demonstrate that VA engaged in any discriminatory conduct against Plaintiff on the basis of her age.[9] *See* Docket No. 15–3.

On September 16, 2010, Plaintiff was reassigned to work as a Health Science Specialist at the Primary Care Unit of VACHS under the supervision of Dr. Ramón Guerrido. She further alleges that Dr. Guerrido assigned her "unclassified duties" because he was not provided with a job description for Plaintiff. *See* Docket No. 24, ¶ 69. Although there are no allegations as to the duration of Dr. Guerrido's supervision of Plaintiff, the record shows that the assignment of "unclassified duties" would be temporary until her job description was prepared and that until such time, the "unclassified duties" would consist on the "Development of Performance Improvement Plan for Compensation and Pension Unit: Evaluation of processes, efficiency, capacity and demand, etc." *See* Docket No. 26–6.

On October 8, 2010, Plaintiff timely filed the complaint in the instant case alleging that she had been the victim of employment discrimination based on her age, hostile work environment, and retaliation in violation of ADEA for the filing of the First EEOC Complaint. Plaintiff amend-

---

7. As the record shows in a thread of email messages, Plaintiff's parking privileges were terminated effective on October 27, 2010, almost one year after she returned from her detail in Florida. *See* Docket No. 26–7.

8. The Court notes that EEOC's investigative report of August 5, 2010, issued in connection with the Second EEOC Complaint, indicates that Plaintiff's charges were brought on the basis of Plaintiff's race, sex, and national origin because, of the entire RME team, only three individuals were investigated, that all three were Hispanic, and that of those three, only the two females were detailed while the investigation came to an end. However, the record shows that among the individuals of the RME team, there are other Hispanic males and females that were not subject to AIB's and OIG's investigation. *See* Docket No. 15–5. The Court notes that these allegations are incongruous with Plaintiff's allegations in the instant complaint because the instant case was brought on allegations of age discrimination. Plaintiff did not include any charges or allegations on the basis of race, sex, or national origin in her original complaint, as she did in the Second EEOC Complaint.

9. Administrative Judge Ana V. González expressly stated in her *Decision Without a Hearing* that "there was no evidence of any similarly situated employees that were treated differently than the Complainant." Docket No. 15–3, page 11.

ed the complaint on February 16, 2011 to add that the retaliation activities were also based on the filing of the Second EEOC Complaint and the filing of the instant case.

On April 20, 2011, the EEOC issued its final decision and corresponding right-to-sue letter in connection with the Second EEOC Complaint dismissing the complaint procedurally on the basis of a pending civil action in the U.S. District Court (i.e., the instant case). The final decision does not include any findings of fact concerning Plaintiff's allegations because, since "[Plaintiff] filed a civil action concerning the same matters in an appropriate U.S. [D]istrict Court", the Second EEOC Complaint was dismissed on procedural grounds. *See* Docket No. 15–7.

On June 3, 2011, VA filed a Motion for Summary Judgment (Docket No. 14). VA contends that Plaintiff's allegations do not establish a case of age discrimination under ADEA, or that VA took retaliatory actions against Plaintiff for engaging in protected activity under ADEA. Further, Defendants argue that Plaintiff failed to exhaust administrative remedies in connection with the retaliatory charges included in the Second EEOC Complaint because it was procedurally dismissed on account of the filing of the instant case. (Docket No. 14).

### III. SUMMARY JUDGMENT

A motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure, which entitles a party to judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." *See Prescott v.*

*Higgins,* 538 F.3d 32, 40 (1st Cir.2008) (citing *Thompson v. Coca–Cola Co.,* 522 F.3d 168, 175 (1st Cir.2008)); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Calero–Cerezo v. U.S. Dep't of Justice,* 355 F.3d 6, 19 (1st Cir.2004) (stating that an issue is genuine if it can be resolved in favor of either party). In order for a disputed fact to be considered "material" it must have the potential "to affect the outcome of the suit under governing law." *Sands v. Ridefilm Corp.,* 212 F.3d 657, 660–661 (citing *Liberty Lobby, Inc.,* 477 U.S. at 247–248, 106 S.Ct. 2505); *Prescott,* 538 F.3d at 40 (citing *Maymi v. P.R. Ports Auth.,* 515 F.3d 20, 25 (1st Cir.2008)).

The principle of the summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *DeNovellis v. Shalala,* 124 F.3d 298, 306 (1st Cir.1997) (citing Fed.R.Civ.P. 56(e) advisory committee note to the 1963 Amendment). The moving party must demonstrate the absence of a genuine issue as to any outcome-determinative fact on the record. *Shalala,* 124 F.3d at 306. Upon a showing by the moving party of an absence of a genuine issue of material fact, the burden shifts to the nonmoving party to demonstrate that a trier of fact could reasonably find in his favor. *Id.* (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The non-movant may not defeat a "properly focused motion for summary judgment by relying upon mere allegations," but rather through definite and competent evidence. *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994). The non-movant's burden thus encompasses a showing of "at least one fact issue which is both 'genuine' and 'material.'" *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir.1990); *see*

also *Suarez v. Pueblo Int'l.*, 229 F.3d 49, 53 (1st Cir.2000) (stating that a non-movant may shut down a summary judgment motion only upon a showing that a trial-worthy issue exists). As a result, the mere existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." *Liberty Lobby, Inc.*, 477 U.S. at 247–248, 106 S.Ct. 2505. Similarly, "summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990).

When considering a motion for summary judgment, the Court must examine the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor in order to conclude whether or not there is sufficient evidence in favor of the non-movant for a jury to return a verdict in its favor. *Rochester Ford Sales, Inc. v. Ford Motor Co.*, 287 F.3d 32, 38 (1st Cir.2002). The Court must review the record as a whole and refrain from engaging in an assessment of credibility or weigh the evidence presented. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 135, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The burden placed upon the non-movant is one of production rather than persuasion. In other words, in weighing a non-movant's opposition to summary judgment the Court should not engage in jury-like functions related to the determination of credibility.

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prod.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Summary judgment is inappropriate where there are issues of motive and intent as related to material facts. *See Poller v. Columbia Broad. Sys.*, 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) (summary judgment is to be issued "sparingly" in litigation "where motive and intent play leading roles"); *see also Pullman–Standard v. Swint*, 456 U.S. 273, 288, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982) ("[F]indings as to design, motive and intent with which men act [are] peculiarly factual issues for the trier of fact."); *Dominguez–Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 433 (1st Cir.2000) (finding that "determinations of motive and intent ... are questions better suited for the jury").

Conversely, summary judgment is appropriate where the nonmoving party rests solely upon "conclusory allegations, improbable inferences and unsupported speculation." *Ayala–Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 95 (1st Cir.1996).

## IV. DISCUSSION AND ANALYSIS

### A. Age Discrimination: Elements for a Prima Facie Case Under ADEA

■ ADEA prohibits discrimination in public and private employment against individuals who are at least 40 years of age. 29 U.S.C. §§ 621–634. ADEA violations may be established by proving either disparate treatment or disparate impact. *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 125 S.Ct. 1536, 161 L.Ed.2d 410 (2005). Plaintiffs often allege claims under both theories. *See Pottenger v. Potlatch Corp.*, 329 F.3d 740, 749 (9th Cir.2003) and *Byrnie v. Town of Cromwell Bd. Of Educ.*, 243 F.3d 93 (2d Cir.2001).

■ Disparate treatment claims under ADEA may be based on direct or circumstantial evidence, as set forth by the

Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–805, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under *McDonnell Douglas,* a prima facie case of intentional age discrimination may be established by demonstrating that: (1) plaintiff is a member of the protected age group (i.e. was at least forty (40) years of age); (2) plaintiff was qualified for the position in question; (3) despite being qualified, plaintiff was adversely affected; and (4) someone younger, with similar or lesser qualifications, was treated more favorably.

The claims of the instant case are consistent with allegations of disparate treatment. Consequently, the Court must determine whether there is direct or circumstantial evidence proving the elements of *McDonnell Douglas* of intentional age discrimination. In this case, there is no doubt that Plaintiff meets the first and the second elements of the prima facie case for age discrimination. It also appears that Plaintiff met the last element, which requires that plaintiffs prove that the employer must have discriminated against plaintiff in favor of someone younger when Plaintiff alleged that she received longer and more complex tasks than those assigned to two of her coworkers that were approximately sixteen (16) years younger than Plaintiff, but notwithstanding, such co-workers were 40 years old. Nonetheless, Plaintiff proffered no evidence that such younger employees were at a more advantageous position than Plaintiff, that they did not receive tasks in addition to those of their regular workload, or that they were not treated by Ms. Ramos in the same fashion as Ms. Ramos treated Plaintiff.[10] But, the question remains as to whether Plaintiff meets the third element—adverse employment action.

An employment action is considered "adverse" when it " 'results in some tangible, negative effect on the plaintiff's employment' through 'a serious and material change in the terms, conditions or privileges of employment . . .' as viewed by a reasonable person in the circumstances." *Belt v. Alabama Historical Commission,* 181 Fed.Appx. 763 (11th Cir.2006) (citing *Shotz v. City of Plantation, Fla.,* 344 F.3d 1161, 1181–82 (11th Cir.2003)). In determining whether an adverse employment action has occurred, courts must consider the totality of the allegations. *See Wideman v. Wal–Mart Stores, Inc.,* 141 F.3d 1453, 1456 (11th Cir.1998).

In connection with the adverse employment action, the record shows that Plaintiff continues to be employed at VA; that she has not been demoted from her position; and that Plaintiff's salary has not been decreased in any manner. The record also shows that Plaintiff has been reassigned to various departments within the VA to work with different supervisors; that she was once transferred from Puerto Rico to Florida for a two-month period on a detail; that during the internal investigation related to the RME incident, her computer access was terminated; and that her parking privileges were removed almost one year after Plaintiff's return to Puerto Rico from her detail. Further, Plaintiff alleged that she was denied a higher-grade position to which she applied on December of 2008 in retaliation for her complaints about her immediate supervisor.

As the record shows, Plaintiff's reassignments were mostly caused and handled pursuant to regulations of the VA, as indi-

---

**10.** Approximately eighteen months prior to this Court's Opinion and Order, the EEOC's administrative judge reached the same con-

clusion based on EEOC's investigation. *See* note *9, supra.*

cated at notes 3 and 4, to accommodate Plaintiff when she refused mediation of her complaints related to her immediate supervisor at the time. Plaintiff was then assigned to work directly under the supervision of Ms. Reissner in another area. When VA decided to assign Plaintiff to work directly with different supervisors and/or in different departments within VACHS, VA did so to accommodate Plaintiff's complaints of age discrimination pursuant to VA regulations. As for Plaintiff's Florida detail, the record shows that it was only temporary as a precaution until an internal investigation initiated by OIG and AIB (on a matter related to the RME incident, explained on page 5 of this opinion) came to an end; that during Plaintiff's relocation to Florida, VA authorized Plaintiff's requests for medical leave to attend her doctor's appointments in Puerto Rico; and that Plaintiff returned to work in Puerto Rico at the same location at the time the detail was initially scheduled to end (despite two consecutive extensions of the same, which Plaintiff finalized from Puerto Rico). In terms of her computer accesses, they were reestablished when she returned to work in Puerto Rico.

▬ Plaintiff's loss of parking privileges and denial of a higher-grade job position may, at first glance, seem an adverse employment action. Nonetheless, to rise to such level, Plaintiff should have submitted evidence demonstrating that the revocation of her parking privilege was a "serious and material change" in the terms and conditions of her employment at VA. *Belt v. Alabama Historical Commission, supra.* Moreover, Plaintiff has not established that age was **the** motivating factor for VA's alleged actions, as required under ADEA, 29 U.S.C. § 623(a)(1). To do so, Plaintiff had to "prove, by a preponderance of the evidence, that age was the 'but-for' cause of

the challenged adverse employment action," as held by the United States Supreme Court in *Gross v. FBL Financial Services, Inc.,* 557 U.S. 167, 129 S.Ct. 2343, 2352, 174 L.Ed.2d 119 (2009). For example, Plaintiff failed to provide details about (1) Ms. Ramos' specific conduct and behavior that constituted the alleged age discrimination; (2) that Ms. Ramos made comments or remarks with respect to Plaintiff's age when Ms. Ramos yelled at Plaintiff, when Ms. Ramos completed Plaintiff's evaluation, or when Ms. Ramos requested Plaintiff perform administrative tasks or other tasks that were the responsibility of other personnel at VACHS; or (3) that Ms. Ramos' alleged favoritism of Plaintiff's peers was on the basis of their relative youth. Plaintiff did not proffer such evidence and rested only on conclusory allegations of age discrimination. It is critical to the Court that the two persons that asked Plaintiff about her retirement date were co-workers not decision-makers within VA and that there is no proof on the record that the question as to her retirement date was conceived or connected to Ms. Ramos or to a decision-maker.

For the reasons stated above, and after examining the facts in the light most favorable to Plaintiff and drawing all reasonable inferences in her favor, **Plaintiff's claims, viewed individually or collectively, do not amount to adverse employment action.** Consequently, she has failed to establish a prima facie case of discrimination on the basis of age under ADEA.

**B. Hostile Work Environment Claim**

▬ To establish a hostile work environment in the context of a Title VII claim, a plaintiff must show that her workplace was "permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of ... [her] employment and

create an abusive working environment." *Colón–Fontanez v. Mun. of San Juan,* 660 F.3d 17, 43–44 (1st Cir.2011) (quoting *Quiles–Quiles v. Henderson,* 439 F.3d 1, 7 (1st Cir.2006) (alterations in original) and *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)) (internal quotation mark omitted).

■■■■ An assessment of whether the work environment is hostile or abusive "must be answered by reference to all the circumstances." See *Marrero v. Goya of P.R., Inc.,* 304 F.3d 7, 18 (1st Cir.2002) (quoting *Harris,* 510 U.S. at 23, 114 S.Ct. 367). While " '[t]here is no mathematically precise test to determine whether [a plaintiff] presented sufficient evidence' that she was subjected to a severely or pervasively hostile work environment," *Pomales v. Celulares Telefónica, Inc.,* 447 F.3d 79, 83 (1st Cir.2006) (second alteration in original), courts have recognized the following factors, among others, as relevant in order to detect sufficient pervasiveness to reach the required threshold: (1) the severity of the conduct; (2) its frequency; and (3) whether it unreasonably interfered with the victim's work performance. *Id.; see also Ríos–Jiménez v. Principi,* 520 F.3d 31, 43 (1st Cir.2008).

■■■■ The jurisprudence is clear that " 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment' " to establish an objectively hostile or abusive work environment. *Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (quoting *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 82, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)).

■■■■ Under ADEA, in order to prevail in a hostile work environment claim, a plaintiff must show evidence demonstrating that: (1) she is a member of the class protected by the ADEA; (2) she was subjected to unwelcome harassment; (3) **the harassment was based on age;** (4) the harassment was sufficiently pervasive or severe so as to alter the conditions of the plaintiff's employment and create an abusive work environment; (5) the objectionable behavior was both subjectively and objectively offensive such that a reasonable person would find it hostile or abusive; (6) that the plaintiff found it hostile or abusive; and (7) some basis for employer liability has been established. See *Gutiérrez–Lines v. Puerto Rico Elec. and Power Authority,* 751 F.Supp.2d 327, 341–342 (D.P.R.2010) (citing *Marquez v. Drugs Unlimited, Inc.,* 2010 WL 1133808 at *8 (D.P.R.2010) and *O'Rourke v. City of Providence,* 235 F.3d 713, 728 (1st Cir.2001)); *see also Rodriguez–Torres v. Gov't Dev. Bank of Puerto Rico,* 704 F.Supp.2d 81, 100 (D.P.R.2010). The Court typically looks to the totality of the circumstances, analyzing "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance" in order to determine whether a hostile work environment exists. *O'Rourke,* 235 F.3d at 728–29 (quoting *Faragher v. City of Boca Raton,* 524 U.S. 775, 787–88, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)).

To support the hostile work environment claim, Plaintiff alleged that Ms. Ramos: (1) called her a gossiper when Plaintiff notified Ms. Ramos about a co-worker's complaint against his own supervisor; (2) yelled at Plaintiff before Plaintiff's peers and other VACHS personnel during meetings; (3) called Plaintiff "unloyal" after an alleged miscommunication during the planning and execution of the Emergency ICS Activation Plan; (4) emailed Plaintiff a document of instructions for Plaintiff to

follow after being reassigned under Ms. Ramos' supervision; and (5) suggested that Plaintiff apply for another position within VACHS that would not be under Ms. Ramos' supervision. None of these facts constitute behavior so offensive that a reasonable person would find hostile or abusive within the context of a person's work environment. Further, there is no evidence connecting the harassment in the workplace to Plaintiff's age or a threat to discipline her whatsoever.

■ Viewing the record in the light most favorable to Plaintiff and drawing all inferences in her favor, this Court finds that, first, there is **no proof as to "harassment based on age,"** and second, that **Plaintiff's allegations fail to rise to the level of severity or pervasiveness that this Court has recognized as indicative of a hostile or abusive work environment.** Although Ms. Ramos' interactions with Plaintiff may be described as harsh, ill-mannered and even impolite, this Court notes that "a supervisor's unprofessional managerial approach and accompanying efforts to assert her authority are not the focus of the discrimination laws." *Colón–Fontanez,* 660 F.3d at 44–45 (quoting *Lee–Crespo v. Schering–Plough Del Caribe, Inc.,* 354 F.3d 34, 46–47 (1st Cir. 2003)). Further, Plaintiff's alleged workplace injustices do not rise to the level of an actionable violation under ADEA. "The workplace is not a cocoon, and those who labor in it are expected to have reasonably thick skins—thick enough, at least, to survive the ordinary slings and arrows that workers routinely encounter in a hard, cold world." *Suárez v. Pueblo Int'l, Inc.,* 229 F.3d 49, 54 (1st Cir.2000). "Federal laws banning [discrimination] 'do[ ] not set forth a general civility code for the American workplace,' and an employee may not base a valid [discrimination] claim on 'pet-

ty slights or minor annoyances that often take place at work and that all employees experience.'" *Gómez–Pérez v. Potter,* 452 Fed.Appx. 3, 2011 WL 6445569, 2011 U.S.App. LEXIS 25456, 114 Fair Empl. Prac. Cas. (BNA) 191 (1st Cir.2011) (quoting *Burlington N. & Santa Fe Ry. v. White,* 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)) (internal citation and quotation marks omitted). Even construing the facts in Plaintiff's favor, as we are required to do under the standard for summary judgment, the evidence does not support a claim of hostile work environment.

**C. Retaliatory Acts**

■ In a retaliation claim under ADEA, a plaintiff must show that she engaged in a protected activity, that she suffered an adverse employment action as a result of her participation in said activity, and that there is a causal connection between those two elements. *See Hernández–Torres v. Intercontinental Trading, Inc.,* 158 F.3d 43, 47 (1st Cir.1998). Courts may also consider other elements, such as the employer's knowledge of the protected activity and the temporal proximity between the alleged retaliation and the employer's adverse action. *Colón–Fontánez,* 660 F.3d at 37 (quoting *Wyatt v. City of Boston,* 35 F.3d 13, 16 (1st Cir. 1994)).

With respect to Plaintiff's retaliation charges, Plaintiff alleged that she filed two complaints with the EEOC—the First EEOC Complaint, on the basis of age discrimination, and the Second EEOC Complaint, on the basis of retaliatory activities.[11] Plaintiff further alleges that the retaliatory activities consisted on her detail to Florida on September of 2009, the two subsequent extensions of the duration of such assignment, and that she would not

---

11. *See* note 8, *supra.*

be subject to performance evaluation for the work performed while on the Florida detail. (Docket No. 7).

In response, VA contends that: (1) the internal investigation initiated by OIG and AIB was related to Plaintiff's conduct while assigned to the RME team when she allegedly failed to report known failures in the implementation of the standardized procedures regarding RME and also sent advance notices to various areas that were scheduled to receive surprise visits by the Veterans Integrated Service Network management personnel; (2) Plaintiff's detail to the VA facilities of Bay Pines, Florida was precautionary and authorized under VA regulations when handling details attributed to reasons related to Plaintiff's RME investigation; (3) personnel from OIG and AIB recommended her detail to Florida until they submitted their final report and recommendations; and (4) Plaintiff's immediate supervisors in Florida were unaware of any of Plaintiff's filings with the EEOC. Hence, the OIG and AIB matter is not related at all with Plaintiff's EEOC complaints.

Further, in connection with Plaintiff's allegations, the record shows that although Plaintiff's Florida detail was twice extended, she was able to return to Puerto Rico after the 60–day original duration period in consideration of Plaintiff's health conditions and doctor's appointments in Puerto Rico. Moreover, the original duration of the Florida detail and the extensions thereof were made in compliance with the applicable VA Handbook (*see* note 4, *supra* ). With respect to Plaintiff's performance evaluation for her work while on detail, Plaintiff received a copy of her performance evaluation for the Florida detail on December 10, 2010 almost one year after she ended the Florida detail only because the evaluator had retired (Docket No. 26–18). Lastly, the person responsi-

ble for authorizing Plaintiff's detail at Florida and the two subsequent extensions had no prior knowledge of Plaintiff's EEOC filing history (*see* Docket No. 15–5, page 9).

 Based on the examination of the record, the only activities that this Court has recognized as indicative of retaliation are Plaintiff's Florida detail, Plaintiff's loss of parking privileges on October of 2010, and Plaintiff's detail of "unclassified duties" while under the supervision of Dr. Guerrido. Nonetheless, Plaintiff did not proffer evidence that these activities were related to her age or that there are material issues as to motive and intent that would preclude summary judgment. Particularly so when Plaintiff's loss of parking privileges was effective one year after her return from the Florida detail, and nineteen (19) months after the cause of the alleged retaliatory activities took place. Also, Plaintiff failed to proffer proof of the duration of her assignment to work under Dr. Guerrido's supervision and of the "unclassified duties." Instead, the record shows a letter of Dr. Guerrido to Plaintiff providing a general description of the "unclassified duties" and that the reason for the same was his lack of a job description for Plaintiff. *See* Docket No. 26–6. Absent any proof of the duration of said assignment, this Court cannot make a determination that the assignment was so severe and pervasive as to be considered an adverse employment action for purposes of the retaliation charge.

While Plaintiff's filing with the EEOC is considered a protected activity, **Plaintiff cannot demonstrate that she suffered an adverse employment action,** as discussed herein and in Section IV.A, *supra,* or that any of the alleged retaliatory activities were based on Plaintiff's age. Consequently, Plaintiff's retaliation claim is also dismissed.

### D. Exhaustion of Administrative Remedies

VA contends in its motion requesting summary judgment that Plaintiff failed to exhaust administrative remedies in connection with the retaliation charges and that this Court should dismiss Plaintiff's retaliation charges for such reason. Specifically, VA proffered proof of the timeline of the filing of the EEOC complaints, issuance of the right-to-sue letters, the dismissal of the Second EEOC Complaint, and the grounds for such dismissal. Docket No. 15 and exhibits thereto. Particularly, VA contends that Plaintiff filed the instant complaint before receiving the right-to-sue letter on account of the Second EEOC Complaint (which is the complaint that includes the retaliation charges) and that the EEOC dismissed the complaint because of the filing of the instant case without even concluding its investigation. Docket No. 15–7.

■ In this case, this Court dismissed Plaintiff's retaliation charges on different grounds than those proposed by VA. For such reason, this Court will not address whether Plaintiff satisfied the exhaustion requirement of ADEA in connection with the retaliation charges.[12]

---

**12.** Nonetheless, the Court reminds Defendants that in *Clockedile v. New Hampshire Dept. of Corrections*, 245 F.3d 1 (1st Cir.2001), the First Circuit abandoned the long-standing "scope of the investigation" test that various circuits (including the First Circuit) had been following in connection with the charges that may be included in a lawsuit in order to comply with the administrative exhaustion requirement of Title VII and ADEA. Under the "scope of the investigation" rationale, plaintiffs may include in their lawsuits charges that would have been uncovered by the EEOC in a reasonable investigation of the charges brought in the administrative complaint. Nonetheless, and based on the specific facts and sequence of events at *Clockedile*, the First

Circuit adopted a new rule, whereby "retaliation claims are preserved [in a lawsuit] so long **as the retaliation is reasonably related to and grows out of the discrimination complained of to the agency**—e.g., the retaliation is for filing the agency complaint itself." *Clockedile*, 245 F.3d at 6. (Our emphasis). Consequently, if the retaliation charges pleaded by a plaintiff in his or her lawsuit are reasonably related to the discriminatory acts included in his or her complaint to the EEOC, or if such charges grow out of the discriminatory acts alleged therein, the retaliation charges may be preserved in the lawsuit even though they were not part of the EEOC complaint.

---

### V. CONCLUSION

Having found that Plaintiff failed to establish a prima facie case of age discrimination, that she failed to establish being the victim of hostile work environment, or that VA took retaliation against Plaintiff for her involvement in protected activities, VA's motion for summary judgment is granted and the complaint is dismissed with prejudice. Judgment will be entered accordingly.

**IT IS SO ORDERED.**